IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| vs. | : | |
| ANDRE HENRY | : | NO. 06-33-01 |

DuBOIS, J.                                                                                                    AUGUST 24, 2007

## MEMORANDUM

On February 22, 2007, a jury convicted defendant Andre Henry of crimes related to eight robberies of fast food restaurants; the straw purchase, possession, and use of assault weapons and other firearms; two armed bank robberies; conspiracy to commit a third armed bank robbery; an attempted carjacking that involved shots fired at a police officer; and solicitation to commit murder of a federal grand jury witness.  Currently before the Court is defendant Andre Henry's *pro se* Motion for Judgment of Acquittal and Motion for New Trial Pursuant to Fed. Rules of Crim. Proc. 29 and 33 (Document No. 473, filed April 12, 2007).  For the reasons that follow, defendant's Motion for Judgment of Acquittal and Motion for New Trial are denied.

**I.     BACKGROUND**

The background of this case is set forth in the Court's previous opinions.  See United States v. Henry, 472 F. Supp. 2d 649, 651 (E.D. Pa. 2007) (denying motions to suppress); United States v. Henry, 2007 WL 419191, *1 (E.D. Pa. Feb. 2, 2007) (granting Motion for an Order Declaring the Defendant in Contempt of Court for Failure to Provide Palm Prints Pursuant to Court Order); United States v. Henry, 2007 WL 419197, *1 (E.D. Pa. Feb. 2, 2007) (denying *pro se* motion to suppress); United States v. Henry, 2007 WL 656877, *1 (E.D. Pa. Jan. 30, 2007) (denying *pro se* motion for reconsideration of order denying motion to dismiss indictment);

United States v. Henry, 2007 WL 219885, *1 (E.D. Pa. Jan. 26, 2007) (denying motions for subpoena). Accordingly, the Court sets forth only that background necessary to resolve defendant's Motion for Judgment of Acquittal and Motion for New Trial.

On October 24, 2006, defendant was charged in a 28-count Superseding Indictment with conspiracy to make false statements to a federal firearms licensee, in violation of 18 U.S.C. § 371 (Count 1); making false statements to a federal firearms licensee, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts 2, 3, 5, 7, 9 ); felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts 4, 6 , 8, 10, 26); Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts 11, 12, 13, 14, 15, 18, 19, 20); attempted carjacking, in violation of 18 U.S.C. § 2119 (Count 16); carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 17, 22, 24); armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Counts 21, 23); conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (Count 25); possession of body armor, in violation of 18 U.S.C. § 931 and 921(a)(35) (Count 27); solicitation to commit murder, in violation of 18 U.S.C. § 373 (Count 28); and aiding and abetting, in violation of 18 U.S.C. § 2.

At trial, the Court bifurcated Count 27 of the Superseding Indictment, the count pertaining to possession of body armor. Trial on Counts 1 through 26 and Count 28 commenced on February 5, 2007. On February 22, 2007, a jury found defendant guilty on each of these counts. The government then withdrew the charges in Count 27.

I.      STANDARD OF REVIEW

     A.      **Motion for Judgment of Acquittal**

A motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal

Procedure may only be granted where the evidence is insufficient to sustain the conviction.[1] United States v. Gonzales, 918 F.2d 1129, 1132 (3d Cir. 1990). The court must determine whether the Government has adduced "substantial evidence to support the jury's guilty verdict." United States v. Wexler, 838 F. 2d 88, 90 (3d Cir. 1988).

In ruling on such a motion, a court may not weigh the evidence, nor may it make credibility determinations which are within the domain of the jury. Rather, the court must consider the evidence in the light most favorable to the Government, draw all reasonable inferences in favor of the Government, and "presume that the jury has properly carried out its function of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences." United States v. Wasserson, 418 F.3d 225, 237 (3d Cir. 2005). Viewing the evidence in its entirety, the verdict must be upheld unless "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).

     **B.**     **Motion for a New Trial**

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may grant a defendant's motion for a new trial if required in the interest of justice.[2] "Whether to grant a Rule 33 motion lies within the district court's sound discretion." United States v. Polidoro, 1998 WL 634921, at *4 (E.D. Pa. Sept. 16, 1998) (citing United States v. Mastro, 570 F. Supp. 1388, 1390

---

[1] Federal Rule of Criminal Procedure 29(a) provides, in pertinent part: "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction of such offense or offenses."

[2] Federal Rule of Criminal Procedure 33(a) provides, in pertinent part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."

(E.D. Pa. 1983)).  In exercising its discretion, the court may grant a motion for a new trial on one of two grounds. First, the court may grant the motion "if, after weighing the evidence, it determines that there has been a miscarriage of justice." United States v. Terlingo, 2001 WL 474407, *1 (E.D. Pa. April 30, 2001).  Second, the court "must grant a new trial if trial error had a substantial influence on the verdict."  Id. at 1184; see also Government of the Virgin Islands v. Bedford, 671 F.2d 758, 762 (3d Cir. 1982) ("The reviewing court must decide whether the error itself had substantial influence on the minds of the jury." (brackets and quotation omitted)).

### III.   DISCUSSION

The Court first addresses defendant's argument in support of his *pro se* Motion for Judgment of Acquittal, and then addresses defendant's argument in support of his *pro se* Motion for New Trial.

####   A.   Motion for Judgment of Acquittal

Defendant raises two arguments in his *pro se* Motion for Judgment of Acquittal: (1) "the evidence was insufficient on the intent element of carjacking because the government did not prove that the prohibited criminal intent (mens rea) existed (before) or at the time of the commission of the act;" and (2) the "government failed to prove the defendant guilty of carjacking . . . the conviction for the firearms charge must also be reversed and remanded for judgement [sic] of acquittal."  Neither arguments has merit.  Accordingly, defendant's *pro se* Motion for Judgment of Acquittal is denied.  The Court addresses defendants' arguments in turn.

#####    1.   Carjacking

Defendant argues that a judgment of acquittal is required as to Count 16, charging attempted carjacking in violation of 18 U.S.C. § 2119, because "the evidence was insufficient on

the intent element of carjacking because the government did not prove that the prohibited criminal intent (mens rea) existed (before) or at the time of the commission of the act constituting the essential element of "intent to cause death or serious bodily injury." Mot. at 2. This argument is rejected because the evidence presented at trial constituted a sufficient basis for a reasonable juror to conclude that defendant was guilty beyond a reasonable doubt as to the charge of attempted carjacking.

### a. Facts

Richard Holland, a co-defendant, testified as follows with respect to the events surrounding the attempted carjacking:

> A. I got a frantic phone call. [Andre Henry] called and said that he needed me to come get him immediately?
> Q. Did he tell you why?
> A. He said he had just gotten into a shoot-out.
> Q. Okay. And did he tell you what happened with the shoot-out?
> A. Yes, after I got up there, he explained to me that he was trying to carjack someone up at Ogontz Avenue, and as soon as he ran for their car, that person jumped in and sped off, when he turned, and was trying to get another car, but said like out of his peripheral he saw someone take a shot at him.
> Q. And did he return fire?
> A. Yes, he turned and let off – I think he said about four or five shots.
>                            * * *
> Q. Did he tell you whether or not that was the police officer?
> A. Yes.
> Q. Okay. And how could he tell it was a police officer.
> A. Because he said he could tell by the way she stood, and that it made the news, so it had to be cop.
>                            * * *
> Q. And so did he talk to you about what weapon he had taken out with him that night?
>                            * * *
> A. He used the AK-47.

February 9, 2007 Tr. at 149-50. Richard Holland further testified that defendant

> A. . . . said he was in the street, and the officer, or whoever was on the pavement, and

5

> he was trying to get the car, tying to get into the car, when he saw a flash of light. He said, all she was, was a flash of light, and he turned and fired, and then ran off.
> Q. Did he tell you how many times he shot at her with the AK-47?
> A. I remember like five, four or five.

Id. at 154.  See Richard Hollands' testimony is consistent with the testimony of Gregory Clay, another codefendant.  February 12, 2007 Tr. at 154-56.

Furthermore, one of the victim of the attempted carjacking, Janine McCullers, testified as follows during the trial:

> [A]s I'm ready to pull out of the parking space, an individual is in front of my car in all black, like a Ninja-type suit, with a gun pointed at me, standing in front of the car with a gun aimed like this – in front of my car saying something.  So my first reaction, I said, put the windows, and I panicked, and my boyfriend looked over at me, he said, run him over. I can't.  I'm scared I'm going to hurt him.  And I looked back at the person.  His mouth was moving, but I couldn't hear him, and he's still standing aiming with the gun at me in the car, in front of the car . . . .  And I panicked and looked up at the guy again, I just closed my eyes and went around him real fast and hit the gas and kept going.
> \* \* \*
> I was shaking, I couldn't really keep my foot on the pedal, I just heard, pop, pop, pop, pop, pop behind me, and I – I started shaking, because I actually thought I was shot from the hearing of the gunfire.

February 9, 2007 Tr. at 18-20.

### b. Legal Standard

"In order for the government to prove armed carjacking under 18 U.S.C. § 2119, the evidence must establish an 'intent to cause death or serious bodily harm' in the course of taking or attempting to take 'a motor vehicle . . . from the person or presence of another by force and violence or by intimidation.'"  United States v. Brown, 2007 WL 1113354, *1 (3d Cir. April 16, 2007) (quoting 18 U.S.C. § 2119 (2000)).

"The specific intent element of this crime may be conditional."[3]  United States v. Jones,

---

[3] "Conditional intent to cause death or serious bodily harm to the carjacking victim" is present where "the defendant intended to cause death or serious bodily harm if the victim resisted

128 Fed. App'x 938, 940 (3d Cir. 2005).  "Under Holloway v. United States, 526 U.S. 1, 12 (1999), the intent requirement for armed carjacking is satisfied when 'the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car.'" United States v. Johnson, 222 Fed. App'x 153, 155 (3d Cir. 2007) (quoting Holloway, 526 U.S. at 12).

        c.        **Analysis**

Defendant argues that he had no intent to cause death or serious bodily harm because the "victim was allowed to drive around and away from the individual in an affirmative refusal to relinquish her vehicle."  Mot. at 3.  This argument warrants little discussion.  Suffice it to say, defendant did not simply allow the victim to drive around him.  Rather, the victim drove away while defendant was using an AK-47 in a shootout with a police officer.  The evidence constitutes a sufficient basis for a reasonable juror to conclude that defendant had the intent to cause death or serious bodily harm in the course of attempting to take the car.  See United States v. Burney, 35 Fed. App'x 354, 355 (3d Cir. 2002); United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998).  Accordingly, the Court concludes that a judgment of acquittal on this ground is not warranted.

        2.        **Firearms**

Defendant was charged with three counts of carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 17, 22, and 24).  Count 17 pertains to the attempted carjacking.  Defendant argues that a judgment of acquittal on Count

---

the defendant's efforts to obtain the victim's car."  United States v. Anderson, 108 F.3d 478, 479 (3d Cir. 1997) (cited in Holloway v. United States, 526 U.S. at 6 n.4, 7 n.5).

17[4] is required because the "government failed to prove the defendant guilty of [attempted] carjacking. Accordingly, the conviction for the firearms charge must also be reversed and remanded for judgement [sic] of acquittal." Mot. at 9. Defendant's argument is rejected because: (1) the government presented sufficient evidence to establish that defendant was guilty of attempted carjacking; and (2) based on the evidence previously discussed, a reasonable juror could conclude that defendant used an AK-47 assault weapon, a firearm, during the attempted carjacking. Accordingly, the Court concludes that a judgment of acquittal on this ground is not warranted.

    B.    **Motion for New Trial**

Defendant raises three arguments in his *pro se* Motion for New Trial: (1) "the government was permitted to admit highly prejudicial testimony that the defendant was currently 'in custody' as rebuttal to a clear mischaracterization and misinterpretation of the defendants cross-examination testimony;" (2) defendant was "coerced to assert the Fifth Amendment [at a suppression hearing] which led to giving up what he believed and sought to be a valid 4th Amendment by the Court through a misstatement of Supreme Court and 3rd Circuit holdings;" and (3) "the Court [did] not charge the jury on the elements of Hobbs Act Robbery." Mot. at 2-9. None of these arguments has merit. Accordingly, defendant's *pro se* Motion for New Trial is denied. The Court addresses defendant's arguments in turn.

---

    [4] Although defendant does not limit his motion for judgment of acquittal to Count 17, Count 17 is the only firearm count pertaining to the attempted carjacking.

### 1. Prejudicial Testimony

Defendant argues that a new trial is appropriate on Counts 1 through 28[5] because "the government was permitted to admit highly prejudicial testimony that the defendant was currently 'in custody' as rebuttal to a clear mischaracterization and misinterpretation of the defendants cross-examination testimony." Mot. at 5. The Court rejects this argument because, in cross-examination, it was defendant--not the Court or the government–who raised the issue of whether he was in custody during the trial.

At trial, defendant testified that he had an identical twin brother, Jermaine Henry,[6] who committed all of the crimes charged, even though Jermaine Henry was incarcerated at the time of the offenses (according to defendant, he switched places with Jermaine Henry in jail and then switched back). See generally Andre Henry, Feb. 15, 2007 Tr. at 130-64. On cross-examination, the government questioned defendant as follows:

> Q. And so you switched back again so that he could be released again in April of 2006, that's what you want them to believe also?
> A. I don't understand.
> Q. Well, he's not in jail anymore, is he?
> A. *Yeah, neither one of us are.*
> Q. Where are you sitting?
> A. I'm sitting in the Federal courthouse right here on the witness stand, talking to you.
> Q. So, you've switched back again and let him be released in April of 2006, is that right, Mr. Henry?
> A. I don't recall when he was released actually, I don't, *but neither one of us are in jail.*

Id. at 185 (emphasis added).

---

[5] The Court notes that defendant was not convicted on Count 27, as the government withdrew this count after defendant was convicted on Counts 1 through 26 and 28.

[6] The Court notes that the evidence at trial established that Jermaine Henry *is not* defendant's identical twin.

9

The defendant was in custody at the time of trial. Thus, by perjuring himself on the stand in this obvious manner, defendant himself raised the issue of whether he was in custody. The Court sees no error in permitting the government to present rebuttal evidence of the fact that defendant was in custody.

The Court notes that the purpose of the rebuttal testimony was not merely to impeach defendant on this ground. To address defendant's unusual and last moment alibi defense, the government sought to have defendant's fingerprints taken in the courtroom to be compared by an expert to a fingerprint card from 2003. Supp. Resp. at 2 (citing Feb. 20, 2007 Tr. at 8-18). In the alternative, the government argued that the fingerprint card taken from the 2003 arrest could be compared to the fingerprint card from the 2006 arrest. However, defense counsel informed the court that defendant refused to stipulate that the fingerprint card from 2006 was taken from him. Id. The Court thus permitted the government to elicit evidence that defendant had remained in custody since his fingerprints were taken in 2006 and was the same person who was fingerprinted in 2006. In short, the Court agreed with the government's argument that it "should be permitted to put forth the actual evidence in this case, which is that he has remained in custody and is the same person that was fingerprinted on that card and has remained in the custody of the marshals since that day. He's put that at issue." Feb. 20, 2007 Tr. at 8. Defendant takes issue with this rationale, but the Court concludes that further discussion of this point is unwarranted because defendant himself raised the issue of whether he was in custody. Accordingly, the Court concludes that a new trial is not warranted on this ground.

### 4. Coercion by the Court at the Suppression Hearing

Defendant argues that a new trial is appropriate on Counts 1 through 28 because he was

"coerced to assert the Fifth Amendment [at a suppression hearing] which led to giving up what he believed and sought to be a valid 4th Amendment by the Court through a misstatement of Supreme Court and 3rd Circuit holdings." Mot. at 8. Specifically, defendant argues violations of his "due process and 6th Amendment rights to a fair trial." Mot. at 7. The Court rejects this argument because the Court did not coerce defendant into invoking his Fifth Amendment privilege against self incrimination and for the additional reason that defendant's choice to do so did not prejudice him.

### a. Facts

Following a January 29, 2007 suppression hearing, the Court denied defendant's suppression motions by Memorandum and Order dated February 2, 2007.[7] United States v. Henry, 472 F. Supp. 2d 649, 658 (E.D. Pa. 2007). The testimony of ATF Special Agent Gerard Gallagher and Pennsylvania State Parole Officer Donna Henry at the suppression hearing amply established that "the searches in question were based on reasonable suspicion, and that defendant's Fourth Amendment right to be free from unreasonable searches and seizures was not violated." Henry, 472 F. Supp. 2d at 658.

Defendant decided to testify at the suppression hearing. Jan. 29, 2007 Tr. at 115. Defendant's testimony, which contradicted the credible evidence of ATF Special Agent Gerard

---

[7] The Court notes that it did not base its ruling on the government's argument that the Supreme Court's recent opinion in Samson v. California, 126 S.Ct. 2193, 2202 (2006) eliminated the requirement of reasonable suspicion because defendant signed Parol Form PBPP-11. Rather, the Court determined that there was reasonable suspicion for the parole officers, accompanied by ATF agents, to conduct the search in question. Henry, 472 F. Supp. 2d at 655 (noting "the Court need not and does not base its ruling on this issue because the parole officers had reasonable suspicion to conduct the searches in question"). Since the issuance of this Court's opinion, the Third Circuit has applied the reasonable suspicion standard in a case where a defendant signed Parol Form PBPP-11. United States v. Eggleston, 2007 WL 2030269, *2 (3d Cir. July 16, 2007).

Gallagher and Pennsylvania State Parole Officer Donna Henry, succeeded in placing his credibility in question, and no more.[8]  See generally id. at 114-31.  After the completion of direct testimony, the government cross-examined the defendant.  During the cross-examination, defendant asked "is that going to be held against me?"  Jan. 29, 2007 Tr. at 139.  The Court responded "The answer is, if you want to talk to your attorney to find out what's going to be held against you or not, do so."[9]  Id.  The Court permitted him to do so.  Id.  Later, over the government's objection, the Court again permitted defendant to speak to counsel, that time off the record.  Id. at 149-50.  After discussion with counsel, defendant chose to invoke his Fifth Amendment privilege against self-incrimination.  Id. at 150-51.  The Court advised defendant that, as a result of invoking the Fifth Amendment, both the direct examination and cross examination of defendant would be stricken.  Henry, 472, F. Supp. 2d at 657.

### b. Legal Standard

The Supreme Court's decision in Simmons v. United States, 390 U.S. 377 (1968) "mandates that a defendant's testimony at a suppression hearing not be used against him at trial."

---

[8] According to defendant, when questioned by parole officers at the probation office,

| | |
|---|---|
| A. | I lied about everything that was in the report. |
| Q. | And you told them that you were doing that? |
| A. | Uh. . . . I made the statement. |
| Q. | Well, did he ask you, did he tell you they didn't think you were being straight? |
| A. | Yeah. |
| Q. | And what did you tell them. |
| A. | Another lie. |

Jan 29, 2007 Tr. at 122.

[9] The Court notes that it did not accept the government's argument that defendant "has waived his Fifth Amendment rights, apparently, for purposes of this hearing . . . ."  Jan. 29, 2007 Tr. at 140.

United States v. Thame, 846 F.2d 200, 207 (3d Cir. 1988). However, Simmons does not "preclude[] the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial." United States v. Salvucci, 448 U.S. 83, 94 (1980) (refraining from resolving the issue but noting that a "number of courts considering the question have held that such testimony is admissible as evidence of impeachment").

      **c.     Analysis**

           **i.     The Court Did Not "Coerce" Defendant**

The Court's interest in encouraging defendant to confer with counsel was to ensure that defendant understood the manner and extent to which his testimony could be used against him at trial. Indeed, the Court initially did so in response to defendant's question "is that going to be held against me?" Jan. 29, 2007 Tr. at 139.

As the Third Circuit has recognized, placing a defendant on the stand at a suppression hearing may be "risky to his defense." Reinert v. Larkins, 379 F.3d 76, 96 n.5 (3d Cir. 2004).

> [Defendant] Reinert testified extensively at trial about the entire incident leading up to and following the death of Sean Brady. By taking the stand at the suppression hearing, Reinert may have been providing the Commonwealth with the means to impeach his testimony. . . . . Were we to adopt a similar interpretation of Simmons [as several other courts] and conclude that suppression testimony was fair game for impeachment purposes, the action of putting Reinert on the stand during the suppression hearing could have *itself* potentially become subject to an allegation of ineffectiveness.

Reinert, 379 F.3d at 96 n.5.

The Court notes that, as in Reinert, defendant decided to take the stand at trial, and thus, defendant's suppression hearing testimony would have been admissible at trial to impeach him. The Court further notes that defendant does not argue that defense counsel misinformed him of the law pertaining to use of his suppression hearing testimony at trial. See Mot. at 8. In a

13

hearing on defendant's motions for new counsel conducted August 8, 2007, defense counsel confirmed that he properly informed defendant of the only way in which his testimony at the suppression hearing could be used against him at trial: as impeachment evidence if he testified at trial. Aug. 8, 2007 Tr. at 15-16.

In sum, it was proper for the Court to give defendant an opportunity to talk to counsel on this issue. The Court certainly did not coerce defendant to invoke his Fifth Amendment privilege against self-incrimination. Mot. at 8. Accordingly, the Court concludes that a new trial on this ground is not warranted.

### ii.   Defendant's Decision to Invoke the Fifth Amendment Did Not Prejudice Him

In Reinert, the Third Circuit further noted that defendant Reinert "failed to show that he was prejudiced by the failure of counsel to inform him of his right to testify at the suppression hearing, *i.e.,* that there was a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different." 379 F.3d at 96.

For the reasons set forth in Henry, 472 F. Supp. 2d at 657, once defendant opted to invoke his Fifth Amendment privilege against self-incrimination, it was appropriate for the Court to strike all of defendant's testimony.

In this case, with or without defendant's testimony, the credible testimony of Agent Gerard Gallagher and Parole Officer Donna Henry at the suppression hearing amply established that "the searches in question were based on reasonable suspicion, and that defendant's Fourth Amendment right to be free from unreasonable searches and seizures was not violated." Henry, 472 F. Supp. 2d at 658. As previously explained, defendant's testimony did not assist him in his suppression argument. Hence, as in Reinert, there was no prejudice resulting from defendant's

decision not to continue to testify at the suppression hearing, leading to the striking of his testimony. Reinert, 379 F.3d at 96.

Accordingly, the Court concludes a new trial on this ground is not warranted.

### 5.  Hobbs Act Robbery

Defendant argues that a new trial is warranted because "the Court [did] not charge the jury on the elements of Hobbs Act Robbery." Mot. at 9. Specifically, defendant appears to argue that the Court did not charge the jury on intent. See id. This argument is rejected because the Court properly charged the jury on all elements of Hobbs Act Robbery.

#### a.  Facts

On February 20, 2007, the Court charged the jury as follows with respect to the crime of Hobbs Act Robbery, alleged in Counts 11, 12, 13, 14, 15, 18, 19, and 20 of the Superseding Indictment.[10]

> In order for the defendant to be found guilty of robbery affecting interstate commerce, the Government must prove each of the following essential elements beyond a reasonable doubt:
> (1) That the defendant knowingly obtained or took the personal property of another, or from the presence of another;
> (2) That the defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and,
> (3) That, as a result of the defendant's actions, interstate commerce or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

February 20, 2007 Tr. at 215.

The Court then instructed the jury in greater detail with respect to each of these three

---

[10] The Court also read the Hobbs Act statute, 18 U.S.C. § 1951, which is sets forth in pertinent part in the legal standard section.

elements. With respect to the first and second elements, the Court charged the jury, in relevant part, as follows:

> A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether defendant acted knowingly may be proven by defendant's conduct and by all of the facts and circumstances surrounding the case. However, the government is not required to prove that the defendant knew that he was breaking the law.

Id. at 216; see also id. at 217 (stating "you must determine whether the defendant knowingly and willfully threatened to use force, violence or fear to unlawfully obtain the property"). With respect to the third element, the Court stated, in relevant part,

> If you find that the defendant intended to take certain actions, that is, he did the acts charged in the superseding indictment in order to obtain property, and you find those actions have either caused or would probably cause an effect on interstate commerce, then you may find the requirements of this element have been satisfied.

Id. at 218.

Finally, in the Court's charge pertaining to attempted Hobbs Act Robbery, the Court stated, in relevant part, as follows:

> In order to find defendant guilty of committing the crime of attempted Hobbs Act robbery, the government must prove beyond a reasonable doubt, that the mental processes of defendant passed from the stage of thinking about the crime to actually intending to commit that crime and that the physical process of defendant went beyond and passed from the stage of mere preparation to some firm clear, and undeniable action to accomplish that intent.

Id. at 221.

### b.     Legal Standard

"The Hobbs Act provides that '[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any

person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined . . . or imprisoned . . . or both.'" United States v. Clausen, 328 F.3d 708, 710 (3d Cir. 2003) (quoting 18 U.S.C. § 1951(a)). The Third Circuit "has held that the primary elements of a Hobbs Act violation are that (1) that the defendants induce their victims to part with property; (2) that the defendants do so through the use of fear; and (3) that, in so doing, the defendants adversely affect interstate commerce." United States v. Local 560 of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am., 780 F.2d 267, 281 (3d Cir. 1985).

"The definition of robbery contained in the Hobbs Act, 18 U.S.C. § 1951, contain[s] implicitly the common law element of specific intent to steal." Gov't of Virgin Islands v. Carmona, 422 F.2d 95, 99 (3d Cir. 1970) (citing United States v. Nedley, 255 F.2d 350 (3d Cir. 1958)) ("In order for the defendant to commit the crime of robbery, the defendant must have formulated the specific intent to commit that crime.").

### c.     Analysis

The Court charged all elements of Hobbs Act Robbery properly. To the extent that defendant argues that the Court's jury instruction did not address intent, the Court was clear that defendant had to have acted "intentionally and voluntarily" to be found guilty of Hobbs Act Robbery. February 20, 2007 Tr. at 215. Additionally, the Court clearly instructed the jury that "to find defendant guilty of committing the crime of attempted Hobbs Act robbery, the government must prove beyond a reasonable doubt that defendant "intend[ed] to commit that crime" and that defendant took "undeniable action to accomplish that intent." Id. at 221. In sum, the Court properly charged the jury on Hobbs Act Robbery. Accordingly, the Court concludes that a new trial on this ground is not warranted.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that neither a new trial nor a judgment of acquittal is warranted on any of the grounds raised by defendant. Accordingly, defendant Andre Henry's *pro se* Motion for Judgment of Acquittal and Motion for New Trial Pursuant to Fed. Rules of Crim. Proc. 29 and 33 are denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| ANDRE HENRY | : | NO.  06-33-01 |
| | : | |

**AND NOW**, this 24th day of August, 2007, upon consideration of defendant Andre Henry's *pro se* Motion for Judgment of Acquittal and Motion for New Trial Pursuant to Fed. Rules of Crim. Proc. 29 and 33 (Document No. 473, filed April 12, 2007), the Government's Response and Memorandum in Opposition to the Defendant's Motions for Judgment of Acquittal and For a New Trial (Document No. 476, filed April 23, 2007), and the Supplemental Response by Government to Defendant's Pro-Se Motions for Judgment of Acquittal and for a New Trial (Document No. 528, filed August 7, 2007), **IT IS ORDERED THAT** defendant Andre Henry's *pro se* Motion for Judgment of Acquittal and Motion for New Trial Pursuant to Fed. Rules of Crim. Proc. 29 and 33 are **DENIED**

BY THE COURT:

/s/ Honorable Jan E. DuBois
JAN E. DUBOIS, J.