**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **ANDRE HENRY** | : | **NO.  06-33-01** |
| | : | |

**DuBOIS, J.**                                                           **JULY 17, 2008**

## MEMORANDUM

On February 22, 2007, a jury convicted defendant Andre Henry of crimes related to eight robberies of fast food restaurants; the straw purchase, possession, and use of assault weapons and other firearms; two armed bank robberies; conspiracy to commit a third armed bank robbery; an attempted carjacking that involved shots fired at a police officer; and solicitation to commit murder of a federal grand jury witness.  Presently before the Court are the following post-trial *pro se* motions filed by defendant:[1]

1. Motion for Rehearing of Motions Document Numbers 182 and 253; Suppression (Document No. 575, filed September 19, 2007)

2. Motion for New Trial (Document No. 584, filed October 1, 2007)

3. Motion for Removal of Governments Protective Order at Bureau of Prisons (Document No. 588, filed October 4, 2007)

4. Motion for Presentence Investigation Materials/Records (Document No. 589 filed October 4, 2007)

---

[1] On November 13, 2006, defendant filed a motion to proceed *pro se*.  The Court held a hearing on the matter on November 21, 2006.  At the hearing, the Court stated that it would appoint new counsel to represent defendant or, if he preferred, the Court would consider his application for leave to proceed *pro se* with stand-by counsel.  In response, defendant stated that he preferred to be represented by new counsel provided he could file *pro se* motions in the event newly appointed counsel decided not to file them.  The Court, by Order dated November 21, 2006, approved that procedure.

5.      Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231, Violation of the Fifth Amendment and Reconsideration/Rehearing of Motion to Dismiss Indictment Document Number 259 (Document No. 628, filed November 1, 2007)

6.      Supplemental Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231 and Rehearing/Reconsideration of Motion to Dismiss Original Indictment (Document No. 259) and Violation of the Fifth Amendment. (Document No. 629, filed November 1, 2007)

For the reasons that follow, defendant's *pro se* motions - those numbered 575, 584, 588, 589, 628, and 629 – are denied.

## I. BACKGROUND

The background of this case is set forth in the Court's previous opinions.  See United States v. Henry, 472 F. Supp. 2d 649, 651 (E.D. Pa. 2007) (denying motions to suppress); United States v. Henry, 2007 WL 419191, *1 (E.D. Pa. Feb. 2, 2007) (granting Motion for an Order Declaring the Defendant in Contempt of Court for Failure to Provide Palm Prints Pursuant to Court Order); United States v. Henry, 2007 WL 419197, *1 (E.D. Pa. Feb. 2, 2007) (denying *pro se* motion to suppress); United States v. Henry, 2007 WL 656877, *1 (E.D. Pa. Jan. 30, 2007) (denying *pro se* motion for reconsideration of order denying motion to dismiss indictment); United States v. Henry, 2007 WL 219885, *1 (E.D. Pa. Jan. 26, 2007) (denying motions for subpoena).  Accordingly, the Court sets forth only the background necessary to resolve the motions presently before the Court.

On October 24, 2006, defendant was charged in a 28-count Superseding Indictment with conspiracy to make false statements to a federal firearms licensee, in violation of 18 U.S.C. § 371 (Count 1); making false statements to a federal firearms licensee, in violation of 18 U.S.C.

2

§ 924(a)(1)(A) (Counts 2, 3, 5, 7, 9); felon in possession of a firearm and ammunition, in

violation of 18 U.S.C. § 922(g)(1) (Counts 4, 6, 8, 10, 26); Hobbs Act robbery, in violation of 18

U.S.C. § 1951 (Counts 11, 12, 13, 14, 15, 18, 19, 20); attempted carjacking, in violation of 18

U.S.C. § 2119 (Count 16); carrying and using a firearm during and in relation to a crime of

violence, in violation of 18 U.S.C. § 924© (Counts 17, 22, 24); armed bank robbery, in violation

of 18 U.S.C. § 2113(d) (Counts 21, 23); conspiracy to commit armed bank robbery, in violation

of 18 U.S.C. § 371 (Count 25); possession of body armor, in violation of 18 U.S.C. § 931 and

921(a)(35) (Count 27); solicitation to commit murder, in violation of 18 U.S.C. § 373 (Count

28); and aiding and abetting, in violation of 18 U.S.C. § 2.

At trial, the Court bifurcated Count 27 of the Superseding Indictment, the count charging

possession of body armor. Trial on Counts 1 through 26 and Count 28 commenced on February

5, 2007. On February 22, 2007, a jury found defendant guilty on each of these counts. The

government then withdrew the charges in Count 27.

## II. STANDARD OF REVIEW

Defendant's *pro se* submissions present three categories of motions:  (1) several motions

for reconsideration of the court's prior rulings; (2) a motion for new trial; and (3) motions to

dismiss the Superseding Indictment.  In addition, defendant has filed miscellaneous motions.

The Court sets forth below the relevant standards of review.

### A.  Motion for Reconsideration

The purpose of a motion for reconsideration is to correct manifest errors of law or fact, or

to present newly discovered evidence.  <u>Max's Seafood Café v. Max Quinteros</u>, 176 F.3d 669, 677

(3d Cir. 1999).  A prior decision may be altered or amended only if the party seeking

reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the district court decided the motion under consideration; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995); see also Rottmund v. Continental Assurance Co., 813 F. Supp. 1104, 1107 (E.D. Pa. 1992). A motion to reconsider may not raise new arguments that could or should have been made in support of, or in opposition to, the original motion. See Balogun v. Alden Park Mgmt. Corp., 1998 WL 692956, at *1 (E.D. Pa. Oct. 1, 1998).

Moreover, "[a] motion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court." Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002); see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (motion for reconsideration may not be used as means to relitigate a disagreement with the court).

### B. Motion for New Trial

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may grant a defendant's motion for a new trial if required in the interest of justice. Fed. R. Crim. P. 33.[2] "Whether to grant a Rule 33 motion lies within the district court's sound discretion." United

---

[2] Federal Rule of Criminal Procedure 33(a) provides, in pertinent part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment." Fed. R. Civ. P. 33(a).

States v. Polidoro, 1998 WL 634921, at *4 (E.D. Pa. Sept. 16, 1998) (citing United States v. Mastro, 570 F.Supp. 1388, 1390 (E.D. Pa.1983)).  In exercising its discretion, the court may grant a motion for a new trial on two grounds.  First, the court may grant the motion "if, after weighing the evidence, it determines that there has been a miscarriage of justice."  United States v. Terlingo, 2001 WL 474407, *1 (E.D. Pa. April 30, 2001).  Second, the court "must grant a new trial if trial error had a substantial influence on the verdict." Id. at 1184; see also Government of the Virgin Islands v. Bedford, 671 F.2d 758, 762 (3d Cir. 1982) ("The reviewing court must decide whether the error itself had substantial influence on the minds of the jury.") (brackets and quotation omitted).

Unless the court has granted an extension, a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).[3]  The Supreme Court has held that this requirement, while not jurisdictional, is an "inflexible" "claim-processing rule."  Eberhart v. United States, 546 U.S. 12, 19 (2005); see also United States v. Higgs, 504 F.3d 456, 464 (3d Cir. 2007) ("time limitation of Rule 33 is a claims-processing rule meant to bring a definite end to judicial proceedings").

### C.  Motion to Dismiss Indictment

The Supreme Court has long held that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits.'"  Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Fisher, 871 F.2d

---

[3]  A motion for new trial based on newly discovered evidence, an issue not presented in this case, must be filed within three years after the verdict or finding of guilty.  See Fed. R. Crim. P. 33(b)(1).

444, 451 (3d Cir. 1989).  An "'indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  See United States v. Destio, 153 Fed. App'x. 888, 892 (3d Cir. 2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).

Generally, defects or errors in grand jury proceedings, including prosecutorial misconduct, will not require dismissal of an indictment unless "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair."  Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988); see also United States v. Birdman, 602 F.2d 547, 559 (3d Cir. 1979) (dismissal of indictment on basis of governmental misconduct is an "extreme sanction which should be infrequently utilized"); United States v. Johns, 858 F.2d 154, 159 (3d Cir. 1989); United States v. Enigwe, 17 F. Supp. 2d 390, 393 (E.D. Pa. 1998) (citing United States v. Lennick, 18 F.3d 814 (9th Cir. 1994)).  The key question on this issue is whether a defendant has been prejudiced by the alleged defects or errors at the grand jury proceedings.  Bank of Nova Scotia, 487 U.S. at 254.  "To find prejudice, the district court must establish that 'the violation[s] substantially influenced the grand jury's decision to indict, or . . . [that] there is grave doubt that the decision to indict was free from the substantial influence of such violations.'"  See United States v. Soberon, 929 F.2d 935, 939-40 (3d Cir. 1991) (quoting Bank of Nova Scotia, 487 U.S. at 256 (internal quotations omitted)).

Errors in a grand jury proceeding that do *not* prejudice a defendant in such a manner are subject to harmless error analysis and are negated by a verdict of guilty by a petit jury.  See United States v. Mechanik, 475 U.S. 66, 70, 72 (1986) ("Measured by the petit jury's verdict,

then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); see also Enigwe, 17 F. Supp. 2d at 393; United States v. Breslin, 916 F. Supp. 438, 441 (E.D. Pa. 1996) (in absence of "fundamental errors," "harmless-error inquiry applies to claims of prosecutorial misconduct before a grand jury").

In this case, defendant raises questions about the sufficiency of the evidence presented to the grand jury, specifically concerning the essential elements of the crimes charged. The Supreme Court has held that a defendant is not entitled to challenge an indictment on the basis of insufficiency of evidence. See Costello, 350 U.S. at 363-64 (indictments not open to challenge on ground that there was inadequate or incompetent evidence). Permitting such challenges would result in a "preliminary trial," which, in turn, "would result in interminable delay but add nothing to the assurance of a fair trial." Id. at 364.

Similarly, indictments are not subject to dismissal on the ground that prosecutors inadequately instructed the grand jury on the law. See Sara Sun Beale et al., 2 Grand Jury Law and Practice § 9:10 (2d ed. 1997 & Supp. 2001) ("Although the issue in Costello was a challenge to the nature and sufficiency of the evidence, the principle announced by the Court applies equally to objections based upon the prosecutor's instructions to the grand jury."); Wayne R. LaFave et al., 4 Criminal Procedure § 15.7(g) (3d ed.) ("Reviewing a challenge to the prosecutor's explanation of the elements of the crime often requires examination of the proof offered to establish those elements, running directly into the review proscribed by Costello.").

## III. DISCUSSION

### A.  Motion for Rehearing of Prior Motions to Suppress[4] (Document No. 575)

In a Memorandum and Order dated February 2, 2007, the Court denied two motions to suppress evidence and statements by defendant.  See Henry, 472 F. Supp. 2d at 658.  The first motion (Document No. 182) was a counseled Motion for Suppression of Any and All Seized [Evidence] From the Defendant's Residence Including But [Not] Limited to his Vehicle.  The second motion (Document No. 253) was a *pro se* Motion for Suppression of Statements and Any and All Evidence Illegally Seized from the Defendants Person, Residence [sic] Including His Vehicle ("Def.'s Mot. for Suppression").[5]

In the February 2, 2007 opinion, the Court stated that a statement given by defendant to ATF Special Agent Gerard Gallagher, in which defendant admitted to "buying six or seven firearms through a female straw purchaser, and admitted that several of the straw purchased guns were stored at his residence," was "not challenged in the two suppression motions."  Id., 472 F. Supp. 2d at 652.  This statement by the Court was incorrect.  While defendant's counseled motion to suppress (Document No. 182) focused on "physical evidence" and not any statements by defendant, defendant's *pro se* motion sought "suppression of all statements given to government agents."  (Def.'s Mot. for Suppression, Document No. 253, at 1.)  Moreover, in a

_____

[4]  For purpose of clarity, the Court renamed the Motion for Rehearing in this heading. The actual title of the Motion as filed by defendant is "Motion for Rehearing of Motions Document Numbers 182 and 253; Suppression."  (See Document No. 575).

[5]  In addition to the two motions, defendant filed a counseled Supplemental Memorandum in Support of the Motion to Suppress Evidence (Document No. 342, filed January 26, 2007) and a *pro se* Supplemental Memorandum of Law for Suppression of Evidence Seized from the Defendants Person, Vehicle, and Residence Document #253 (Document No. 351, January 29, 2007).

Supplemental Memorandum, defense counsel specifically challenged the admissibility of the statements at issue.  (See Def.'s Supplemental Memorandum, Document No. 342, at 6.)

Defendant now seeks reconsideration of his two prior motions to suppress (Document Nos. 182 and 253) because of the Court's statement that "[t]he statement given by defendant to Agent Gallagher" was "not challenged." Henry, 472 F. Supp. 2d at 652.  The Court concludes that, notwithstanding the misstatement, defendant's Motion for Rehearing should be denied.  The record on this issue is clear and complete and the Court has already ruled on the motions in their entirety.  See id. at 658 (denying motions to suppress statements and evidence).  All that is missing is an explanation for the Court's ruling on the motion to suppress statements and the Court provides that explanation now.[6]

In the counseled Supplemental Memorandum to the Motion to Suppress Evidence, defense counsel argued that defendant's statement to Special Agent Gallagher was "fruit of the poisonous tree" because it was obtained "on the heels" of an illegal search and seizure.  (Def.'s Supplemental Memorandum, Document No. 342, at 6.)   Similarly, defendant argued in his *pro se* motion that his "statements to government agents" should be suppressed because they were the "fruits" of illegal searches and seizures, including his "illegal arrest."  (See Def.'s Motion for Suppression, Document No. 253, at 1, 3.)  Defendant also argued in his *pro se* motion that he was "illegally interrogated by parole and government agents through coercion and force in violation of the law."  (See Def.'s Motion for Suppression, Document No. 253, at 3) (citing, *inter alia*, Miranda v. Arizona, 384 U.S. 436 (1966)).  No other reason for suppressing statements was

---

[6] The Court fully addressed the motions to suppress physical evidence in its February 2, 2007 opinion.  See Henry, 472 F. Supp. 2d at 656-58.

offered in defendant's submissions.  The evidence does not support these arguments for suppressing defendant's statement to Special Agent Gallagher and, therefore, the Court rejects them.

The Court first addresses defendant's argument that his statement to Special Agent Gallagher should have been suppressed as fruit of the poisonous tree.  Defendant contends that law enforcement officials engaged in "unconstitutional acts" first by detaining or "seizing" him, and searching his person, without reasonable suspicion, and, second, by searching and seizing evidence from the trunk of his car.  (See Def.'s Supplemental Memorandum, Document No. 342, at 5-6; see also Def.'s Mot. for Suppression, Document No. 253, at 1-2.)  It is defendant's position that his statement to Special Agent Gallagher was "the product of those unconstitutional acts" and should therefore be suppressed.  (Def.'s Supplemental Memorandum, Document No. 342, at 6.)  The Court has already ruled that the searches of defendant's person and vehicle, and the seizures of evidence resulting from those searches, were entirely proper.  See Henry, 472 F. Supp. 2d at 655, 656-58.  What was not covered in the Court's February 2, 2007 opinion was the claim that defendant was unlawfully detained in the first instance.  The Court addresses that claim now.

To prevail on his claim of unlawful seizure, defendant, who was on parole at the time he was detained, must show that the parole officer who detained him lacked reasonable suspicion to do so.  See Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003) (seizure of a parolee based on reasonable suspicion satisfies Fourth Amendment standard); see also United States v. Miller, 267 Fed. App'x 152, 154 (3d Cir. 2008) (detention of parolee did not violate Fourth Amendment where officer had reasonable suspicion to detain him); Breslin v. Brainard, 2003 WL 22133833,

at *7 & n.8 (E.D. Pa. Sept. 15, 2003) (same); cf. United States v. Wingfield, 206 Fed. App'x 208,

210 (3d Cir. 2006) (officers need only have reasonable suspicion to search individual on

supervision).[7]

 "In deciding whether reasonable suspicion exists, 'courts must look at the totality of

circumstances of each case' and decide whether an officer had a particularized and objective

basis for suspecting a violation of the law." Wingfield, 206 Fed. App'x at 210 (quoting United

States v. Arvizu, 534 U.S. 266, 273 (2002)).  On the basis of the evidence presented, the Court

concludes that the officer who detained defendant had such a basis for suspecting a violation of

the law.  Id.  Specifically, during the suppression hearing, the parole officer, Donna Henry,

testified that the day before the seizure in question took place, she was informed by Special

Agent Gallagher that defendant "had a woman purchase several types of assault rifles and

shotguns" for him and another parolee.  (Jan. 29, 2007 Hr'g Tr. at 52-53.)

 Further, Ms. Henry testified that her experience with parolees who had been convicted of

weapons offenses also factored into her decision to detain defendant:

> Q: And so, in your experience, prior to meeting Andre Henry, have you had
> experience with parolees who had been convicted of weapons offenses,
> who you then went on to find weapons secreted in their vehicles, on their
> person or in their residence?
>
> A: Yes, many times.
>
> Q: Many times?
>
> A: Yes.

---

 [7] The Court also notes that in the counseled Supplemental Memorandum, defense
counsel frames the "threshold question" as whether the officer who detained defendant had
"reasonable suspicion" to believe he was in possession of weapons.  (See Def.'s Supplemental
Memorandum, Document No. 342, at 5.)

Q:      And did that factor into your decision to conduct the search of Andre
        Henry's vehicle, person and house in this case?

A:      Yes, it did.

Q:      Did that also factor into your decision to detain Mr. Henry at the time you
        detained him?

A:      Absolutely.

(Jan. 29, 2007 Hr'g Tr. at 91.)

    Given the information she received from Special Agent Gallagher, and her experience in

dealing with individuals convicted of weapons offenses, Ms. Henry possessed a "particularized

and objective basis" for suspecting that defendant violated the law and therefore her detention of

defendant was lawful.  See Miller, 267 Fed. App'x at 154 ("Given [defendant's] parolee status,

and the facts providing [the officer] . . . with reasonable suspicion, [defendant's] detention was

reasonable and did not violate the Fourth Amendment."); see also Knox, 342 F.3d at 658-59

(seizure based on reasonable suspicion that defendant violated parole does not violate Fourth

Amendment).  Accordingly, defendant's claim that he was unlawfully seized is rejected.  For this

reason, and for the reasons provided in the Court's February 2, 2007 opinion, defendant's fruit of

the poisonous tree argument - both as to his initial seizure and the searches and seizures that

followed - is rejected.

    Next, the Court addresses defendant's argument that his statement should be suppressed

because it was the "result of . . . coercion" and an illegal interrogation.  (Def.'s Mot. for

Suppression, Document No. 253, at 1, 3.)  The evidence presented establishes that defendant's

statement was given to Special Agent Gallagher after he was read his Miranda rights and waived

those rights.  (See October 21, 2003 Waiver of Right to Remain Silent and of Right to Advice of

Counsel at 1; Jan. 29, 2007 Hr'g Tr. 102-03.)  Because a Miranda waiver weighs heavily in a determination as to whether a defendant was illegally interrogated, the Court begins its analysis with a discussion of Miranda.

The law on this issue is well settled.  Before a suspect who is in custody may be questioned by law enforcement he must be apprised of his Constitutional rights.  Miranda, 384 U.S. at 478-79.  A valid waiver of those rights must be knowing, voluntary, and intelligent.  See Miranda, 384 U.S. at 444; United States v. Briggs, 2008 WL 1745661, at *14 (E.D. Pa. Apr. 14, 2008).  In other words, the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).  "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."  Id. The Supreme Court has held that the government must prove waiver of Miranda rights by a preponderance of the evidence.  Colorado v. Connelly, 479 U.S. 157, 168 (1986).

The government asserts that "[n]othing in this case was unduly coercive or intimidating" and that the voluntariness of defendant's statement is evidenced by his "written and signed waiver of Miranda, which the defendant executed before speaking with federal agents."  (Gov't's Resp. in Opp'n to Def.'s Pro-Se Motion for a Rehearing of Motions 5-6; October 21, 2003 Waiver of Right to Remain Silent and of Right to Advice of Counsel at 1.)  Moreover, the government notes that "at no time during the brief interview did the defendant give any indication that he was suffering from any mental or physical ailment, nor were there any signs

13

that he was in anything but good mental and physical condition." (Gov't's Resp. in Opp'n to Def.'s Pro-Se Motion for a Rehearing of Motions 6.) For these reasons, the government "submits that the defendant's 'statements' were taken in accordance with the law . . . ." (Gov't's Resp. in Opp'n to Def.'s Pro-Se Motion for a Rehearing of Motions 6.) The Court agrees.

As the Court explained in the February 2, 2007 opinion, defendant "twice signed and dated a form stating his <u>Miranda</u> rights. One signature [was] below a sentence stating 'I have read this statement of my rights and it has been read to me, and I understand what my rights are.'" <u>Henry</u>, 472 F. Supp. 2d at 652. (See October 21, 2003 Waiver of Right to Remain Silent and of Right to Advice of Counsel at 1.) Another signature was below a paragraph stating:

> I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights, and I am willing to make a statement and to answer questions.

<u>See</u> <u>id.</u> (citing October 21, 2003 Waiver of Right to Remain Silent and of Right to Advice of Counsel at 1).

Although defendant testified during a suppression hearing that he was lying at the time he made the admission to Special Agent Gallagher and that he felt pressured to speak to Gallagher by a parole officer, that testimony was stricken after defendant invoked his Fifth Amendment right against self-incrimination. (See Jan. 29, 2007 Suppression Hr'g. Tr. 149-151.) <u>See also</u> <u>Henry</u>, 472 F. Supp. 2d at 657 ("it is appropriate to exclude 'a defense witness's testimony when the witness has refused on cross-examination to respond to questions on non-collateral matters'") (quoting <u>Denham v. Deeds</u>, 954 F.2d 1501, 1504 (9th Cir.1992)). There is, in short, no evidence that "government agents" used "coercion and force" to obtain defendant's statement.

Indeed, the signed Miranda waiver belies that claim.  Therefore, defendant's second argument for seeking suppression of his statement – that he was coerced and illegally interrogated – is also rejected.

The Court has addressed all of the issues raised in the motions to suppress statements (Document Nos. 182 and 253), and the supplements to those motions, fully examined defendant's arguments therein, and rejected those arguments based on the existing record. Because the Court has now explained its ruling on the motions to suppress statements based on the existing record, the Motion for Rehearing of Motions Document Numbers 182 and 253; Suppression (Document No. 575) is denied.  See Max's Seafood, 176 F.3d at 677.

### B.  Motion for New Trial (Document No. 584)

Defendant's Motion for New Trial was purportedly filed under Federal Rule of Criminal Procedure 33 and 28 U.S.C. § 2255.  The motion is based primarily on a claim of ineffective assistance of counsel.  Defendant claims that his counsel was ineffective for the following reasons: (1) failing to ensure that defendant did not proceed to trial until all pre-trial motions were "heard by the Court"; (2) failing to supplement a pre-trial *pro se* suppression motion; (3) "passively allowing the government and this Court to argue the applicability of Samson v. California"; and (4) agreeing with the government to "purposely overlook a constitutional challenge to evidence portentously presented to a jury."  (Def.'s Mot. for New Trial 1.)  In addition, defendant argues that the "jury was without constitutional jurisdiction to hear this case" and, thus, "seeks reversal of the defendants [sic] conviction."  (Def.'s Mot. for New Trial 2.) Finally, defendant seeks "proper adjudication of [his] constitutional challenge to the government's evidence . . . ."  (Def.'s Mot. for New Trial 2.)

15

The Court notes that the instant motion is defendant's second Motion for New Trial. Defendant's first motion for new trial, (Document No. 473, filed April 12, 2007), did not raise any issues relating to ineffective assistance of counsel, although the grounds for the ineffectiveness claim were known to defendant at that time.  The Court denied defendant's first motion for new trial on the merits in an opinion dated August 24, 2007.  See United States v. Henry, 2007 WL 2458555 (E.D. Pa. Aug. 24, 2007).  Although the first motion was not timely, that issue was not raised by the government and the Court did not raise it *sua sponte*.  In this case, the government has raised a timeliness argument.  (Gov't Resp. in Opp'n to Mot. New Trial 5.)

Federal Rule of Criminal Procedure 33(b)(2) requires any motion for a new trial, except those based on newly discovered evidence, to be filed within 7 days after the verdict or finding of guilty.  See Fed. R. Crim. P. 33(b)(2); see also United States v. Gaydos, 108 F.3d 505, 512 (3d Cir. 1997); United States v. Robles, 814 F. Supp. 1233, 1238-39 (E.D. Pa. 1993).  Pursuant to Fed. R. Crim. P. 45(b), a court may grant an extension of time to file such a motion under certain circumstances.  See Fed. R. Crim. P. 45(b).  However, such an extension must generally be made within the seven day period.  Id.  Thereafter, a court may only consider an untimely motion for new trial if the failure to timely file was due to "excusable neglect."  See Fed. R. Crim. P. 45(b)(1)(B); United States v. Walton, 2007 WL 2108118, at *8 (E.D. Pa. July 20, 2007).

Defendant filed the instant Motion for New Trial on October 1, 2007, approximately *seven months* after he was convicted.  Defendant never requested an extension of time in which to file, nor did the Court grant such an extension "on its own."  Fed. R. Crim. P. 45(b). Accordingly, defendant's Motion for New Trial is untimely and is denied on that ground.  See

16

Eberhart, 546 U.S. at 19 (holding that, while not jurisdictional, Rule 33 is an "inflexible" "claim-processing rule").  By reason of this ruling, the Court does not reach the merits of defendant's arguments.

The Court notes that defendant also moved for a new trial pursuant to 28 U.S.C. § 2255. However, because defendant has not yet been sentenced, "such a motion is premature and this court cannot consider the instant Rule 33 motion as a § 2255 petition."  United States v. McLaughlin, 89 F. Supp. 2d 617, 629-30 (E.D. Pa. 2000) (citing Robles, 814 F. Supp. at 1239 n.4 (stating that § 2255 petition was premature where defendant had not been sentenced and therefore was not "in custody under sentence" as required by statute)).

### C.  Motion for Removal of Government's Protective Order at Bureau of Prisons ("BOP") (Document No. 588)

Defendant seeks removal of a government-requested "protective order" separating him from his co-defendant and brother, Leon Henry, within the BOP on the ground that the order is "unnecessary and malicious." (Def.'s Mot. for Removal of Protective Order.)  Additionally, defendant states that the separation order "has already deprived [him] of his 6th Amendment right to a fair trial and adequate pre-trial preparation . . . ."  (Def.'s Mot. for Removal of Protective Order.)

The government opposes the Motion for two reasons.  First, the government asserts that because defendant has not challenged this "aspect of his imprisonment" through available administrative remedies, as required by 28 C.F.R. §§ 542.10-542.19, the Motion "is premature and must be denied."  (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 5.)  Second, the government argues that the decision to separate Andre and Leon Henry should not be

17

disturbed because it is necessary to ensure prison security and safety and was made pursuant to prison regulations that are reasonably related to legitimate penological interests.  (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 6-8) (citing, *inter alia*, 28 C.F.R. § 524.72).

The government filed a Supplemental Response to defendant's motion for removal of the separation order on July 10, 2008.  In that Supplemental Response, the government argued that defendant and his brother are "violent criminals that must be separated for the safety of all others connected to this case."  (Gov't's Supplemental Resp., Document No. 700, 1.)  Allowing defendant to have contact with his brother, the government asserts, "would only serve to further jeopardize those persons who were initially targeted by the Henry brothers, and any others they may target in the future."  (Gov't's Supplemental Resp., Document No. 700, at 2.)

The Court denies the Motion for Removal of the Government's Protective Order on two grounds and addresses each ground in turn.  First, the Court denies the Motion for failure to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e; see also Booth v. Churner, 532 U.S. 731, 739 (2001); Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).  The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002); see also id. at 520 ("exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").

The BOP "has an established procedure allowing for administrative review of inmate

complaints through its Administrative Remedy Program . . . ." <u>Beckley v. Miner</u>, 125 Fed.

App'x. 385, 389 (3d Cir. 2005); <u>see also</u> 28 C.F.R. §§ 542.10-542.19.  Under the Administrative

Remedy Program,

> an inmate must file a request for administrative relief (using Form BP-9) to the
> warden of the institution where he or she is confined within twenty days of the
> date on which the basis for the request occurred.  28 C.F.R. § 542.14.  If
> dissatisfied with the response at the prison level, the inmate may file an appeal
> (using Form BP-10) to the Regional Director, and then to the General Counsel's
> office. The decision of the General Counsel is final.  28 C.F.R. § 542.15.

<u>Ramos v. Hawk-Sawyer</u>, 212 Fed. App'x. 77, 79 (3d Cir. 2006).

The government stated in its response to the motion that "[t]o date, defendant has not

attempted to pursue any available administrative remedies."  (Gov't's Resp. to Def.'s Mot. for

Removal of Protective Order 5.)  There is no evidence to the contrary.  The Supreme Court has

made "clear that courts should not intervene in matters regarding prison conditions until

corrections officials have had the time and opportunity to address such complaints internally."

<u>See</u> <u>United States v. Al-Marri</u>, 239 F. Supp. 2d 366, 367-38 (S.D.N.Y. 2002) (citing <u>Porter</u>, 534

U.S. at 525).  Providing that opportunity to prison officials allows them to take corrective action,

if it is warranted, and thereby obviate the need for litigation.  <u>Porter</u>, 534 U.S. at 525.  It also

allows them to filter out frivolous claims and, for cases ultimately brought to court, facilitate

adjudication by developing "an administrative record that clarifies the contours of the

controversy." <u>Id.</u>

Because defendant has not exhausted the available administrative remedies, the motion to

lift the separation order is premature and is, therefore, denied. <u>See</u> <u>Al-Marri</u>, 239 F. Supp. 2d at

367 (denying defendant's motion to be released from a Special Housing Unit for failure to

exhaust administrative remedies); cf. United States v. Ali, 396 F. Supp. 2d 703, 705-707 (E.D.

Va. 2005) (dismissing, without prejudice, defendant's motion for relief from special

administrative measures; holding that issue not "ripe" for consideration because defendant failed

to exhaust administrative remedies).

Second, the Court denies the Motion because it lacks a legal basis. To the extent that

defendant's Motion is based on his Sixth Amendment right to a fair trial and to "adequate pre-

trial preparation," it is without merit because defendant has already been tried and convicted.

Further, defendant's argument lacks merit because, leading up to trial, he was permitted to meet

with his brother, co-defendant, Leon Henry, so long as both defendants' attorneys were present.

(See Order of Aug. 24, 2006.) Defendant does not allege any other constitutional claim deriving

from the separation order. Thus, the only basis for defendant's motion is that the separation

order is "unnecessary and malicious."

The Supreme Court and the Third Circuit have repeatedly emphasized the importance of

according deference to prison officials' choices about how to run their institutions, particularly

concerning prison safety and order. See Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005);

Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003) (when a "challenged [prison] regulation

implicates security . . . judicial deference is especially appropriate"); Fraise v. Terhune, 283 F.3d

506, 513-14 (3d Cir. 2002). Even where a prison regulation impinges on an inmate's

constitutional rights, that regulation will be upheld if it is "reasonably related" to legitimate

penological interests, and is not an exaggerated response to those concerns. Turner v. Safley,

482 U.S. 78, 87 (1987). It is beyond dispute that prison security and order are legitimate

penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-51 (1987); Fraise,

283 F.3d at 516.

The BOP regulations at issue provide that, for purposes of safety and order, inmates may be separated from the general prison population or housed in a different institution from "other specified individuals" under certain circumstances.  See 28 C.F.R. §§ 524.70, 524.72(f).  For example, an inmate who "has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution," may be separated.  28 C.F.R. § 524.72(f).  Similarly, an inmate may be "separated from others at the request of the Federal Judiciary or U.S. Attorneys."[8]  Id.

The government contends that defendant has been separated from his co-defendant and brother, Leon Henry, pursuant to these regulations.  In its brief, the government details the high "level of violence of which each [defendant] is capable." (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 7-8.)  In particular, the government cites past threats by defendant and his brother, Leon, including threats against testifying witnesses; attempts by defendant to smuggle weapons into federal court; and the violent nature of the acts for which defendants were convicted.  (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 4, 7-8.)  For these reasons, the government asserts that defendant "fits into" several of the classification categories warranting separation and that the "order separating [defendant] from his co-defendant Leon Henry is entirely justified."  (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 7.)

Under the circumstances of this case, the Court concludes that judicial deference to the BOP is "especially appropriate."  Morton, 343 F.3d at 218.  The separation, or "protective," order

_____

[8]  The separation order at issue was requested by the United States Attorney's Office. (Gov't's Resp. to Def.'s Mot. for Removal of Protective Order 7.)

relates directly to the legitimate penological interest in institutional safety and order.  The Third Circuit has stated that where a regulation implicates prison security, "a measure of deference is especially appropriate."  Fraise, 283 F.3d at 516.

Further, permitting contact between defendant and his brother would present significant security and safety issues.  As demonstrated by their convictions, defendant and his brother are capable of committing violent acts and plotting to commit such acts.[9]  Both defendant and his brother were convicted of conspiring to straw purchase weapons and possessing firearms as convicted felons.  Andre Henry was also convicted of crimes related to eight robberies of fast food restaurants; two armed bank robberies; conspiracy to commit a third armed bank robbery; an attempted carjacking that involved shots at a police officer; and solicitation to commit murder of a federal grand jury witness.  At trial, a government witness testified that, in furtherance of the solicitation to commit murder charge, defendant communicated with his brother Leon in an effort to identify and locate individuals who cooperated with the government during the grand jury stage of the prosecution.  (See Feb. 8, 2007 Trial Tr. 6-7.)  Finally, during his trial, Andre Henry attempted to smuggle a seven to nine inch "shank" into the courtroom.  (See Feb. 9, 2007 Trial Tr. 2-15.) That "shank" was described by a United States Marshal as a "deadly weapon."  (Feb. 9, 2007 Trial Tr. 4.)  Given these facts, the Court finds no reason to remove the separation order. Accordingly, defendant's Motion for Removal of the Government's Protective Order is denied.

---

[9]  The crimes for which defendant Andre Henry was convicted are set out in the Background section of this Memorandum.  In a separate trial, Leon Henry was convicted of (1) conspiracy to make false statements to a federal firearms licensee from in or about August 2003 to in or about October 2003, in violation of 18 U.S.C. § 371; (2) making false statements to a federal firearms licensee, on or about October 3, 2003, in violation of 18 U.S.C. § 924(a)(1)(A) and 18 U .S.C. § 2; and (3) possessing a firearm as a convicted felon, on or about October 3, 2003, in violation of 18 U.S.C. § 922(g)(1).

### D.  Motion for Pre-sentence Investigation Materials and Records (Document No. 589)

Defendant requests "all pre-sentence investigation materials obtained by and through the U.S. Probation Dept. in order to duly prepare for further proceedings . . . ." (Def.'s Mot. for Pre-Sentence Investigation Materials.)  "The Defendant further seeks these materials as proof to substantiate claims of [a] governmental conspiracy to deprive [him] of his rights . . . ." (Def.'s Mot. for Pre-Sentence Investigation Materials.)  It is clear from the Motion that defendant does not seek the presentence investigation report ("PSI") itself but rather background "records."[10]

"The government submits that such records are the property of the Court and are presumed to be confidential. . . ." (Gov't's Resp. to Mot. for Presentence Materials 2.)  Citing United States v. Corbitt, 879 F.2d 224, 239 (7th Cir. 1989), and other cases,[11] the government argues that the presumption of confidentiality can be overcome only where a "compelling, particularized need for disclosure is shown." (Gov't's Resp. to Mot. for Presentence Materials 3-4.)  Moreover, the government argues that Federal Rule of Criminal Procedure 32(d)(3) "mandates non-disclosure of certain portions of the presentence report," including any sources of information obtained upon a promise of confidentiality and "any other information that, if

---

[10]  Under Federal Rule of Criminal Procedure 32(e)(2), a defendant is entitled to receive the presentence report.

[11]  These cases include United States v. Harrison, 2003 WL 21027286, at *3 (E.D. Pa. May 7, 2003) (motion by third parties for "entire probation office file" denied because third parties showed "no particularized need compelling or even suggesting disclosure" and disclosure would do "much to harm the work of U.S. Probation officers"); United States v. Hirsh, 2007 WL 1810703, at *5 (E.D. Pa. June 22, 2007) ("intervenor has the burden of showing a 'compelling need' for the PSI and that the release of the PSI is in the interests of justice"); and United States v. Loeper, 132 F. Supp. 2d 337 (E.D. Pa. 2001) (third-party seeking access to a PSI has the burden of showing a compelling, particularized need for disclosure).

disclosed might result in physical or other harm to the defendant or others."  (Gov't's Resp. to

Mot. for Presentence Materials 4.)  The government opposes disclosure of "the confidential

materials or the sources of information contained in the presentence report" on the ground that

defendant has not carried his burden of showing a "compelling, particularized need" for the

records, and because disclosure of such information "could result in physical or other harm as

contemplated by Rule 32(d)(3)."  (Gov't's Resp. to Mot. for Presentence Materials 5.)[12]

     In Corbitt, the Seventh Circuit held that third parties seeking disclosure of a criminal

defendant's presentence investigation report may obtain such a report "only where a compelling,

particularized need for disclosure is shown."  879 F.2d at 239.  The court based its ruling on the

strength of "three general factors [which] justify the secrecy of presentence reports."  Id. at 229.

Those factors are: (1) the privacy interests of the defendant, the defendant's family and the crime

victim; (2) the interest of the court in full disclosure of information relevant to sentencing; and

(3) the interest of the government in the secrecy of information related to ongoing criminal

investigations, and information derived from grand jury proceedings.  Id. at 229-30.

     In examining those factors, the Corbitt court concluded that public disclosure of the

contents of presentence reports would interfere with the ability of probation officers and

sentencing courts to obtain full and candid information from the accused and sources

independent of the accused.  See id. at 232 (requiring disclosure of PSI contrary to public interest

"as it would adversely affect the sentencing court's ability to obtain data on a confidential basis

---

     [12]  In a Supplemental Response, the government asserted, more directly, that defendant "is
a violent criminal who will use that information to harm others.  The government relies upon . . .
evidence that was admitted at trial that clearly demonstrates that [defendant] is a danger to
anyone he comes in contact with . . . ."  (Gov't's Supplemental Resp., Document No. 698, at 1.)

from the accused and from sources independent of the accused for use in the sentencing process"); see also id. at 235 ("widespread disclosure of the presentence report may obstruct the government's ability to investigate crimes").  The Corbitt court also observed that the release of PSIs may compromise the privacy interests of the defendant and others.  Id. at 230.  Numerous courts in this district have followed the reasoning of Corbitt and applied the "compelling [and] particularized need" where third parties request a defendant's presentence report.  See, e.g., Hirsh, 2007 WL 1810703, at *5 (recognizing "chilling effect" on willingness of individuals to contribute information for use in report); Loeper, 132 F. Supp. 2d at 337 (acknowledging that general release of PSIs would "necessarily have chilling effect" on individuals or entities to disclose what they know).

The Court has found only one case in this district in which there was a request, as in this case, for what amounts to "disclosure of all probation records."  Harrison, 2003 WL 21027286, at *1.  The request in Harrison included "the entire probation office file, including periodic interviews with the probationer, house visits, compliance issues, and reports to the supervising court."  Id. at *2.  The Harrison court denied the motion on the grounds that the third party individuals who requested the materials failed to show a "particularized need compelling or even suggesting disclosure."  Id. at 3.  Further, the court stated that disclosing the background materials "will do much to harm the work of U.S. Probation officers."  Id.

While this case is different from Corbitt and Harrison in that defendant himself, and not a third party, is seeking disclosure of presentence investigation materials, the Corbitt and Harrison courts' reasoning applies with equal, if not greater, force under the facts of this case.  First, defendant has failed to show a compelling and particularized need for disclosure of the

presentence investigation records and materials.  In his motion, defendant avers generally that he needs the records and materials to "duly prepare" for court proceedings and to "substantiate claims of [a] governmental conspiracy."  (Def.'s Mot. for Presentence Investigation Materials/Records.)  He does not state what he believes the records and materials will show, or how they will assist him in preparing for further proceedings.  This failure to show a compelling and particularized need requires denial of defendant's motion.

Second, the need to protect the privacy of government witnesses and informants weigh strongly against disclosure in this case.  Defendant has been convicted of numerous violent crimes, including most importantly, for purposes of this motion, solicitation to commit murder of a federal grand jury witness.  That conviction alone provides a basis for denying his motion.  The record shows that defendant has in the past sought to locate other individuals who have cooperated with the government.   In a letter seized by the government, which was admitted into evidence at trial, defendant wrote to a neighbor asking her find his co-defendant.  (See Gov. Trial Ex. 125-2; Feb. 9, 2007 Trial Tr. 63.)  The letter stated: "I've been trying to find out what she said to the F.B.I.  Seems that she is nowhere to be found . . . No matter where she is get information on how to contact her then give it to me . . . so we can get things moving."  (See Gov. Trial Ex. 125-2.)  Given this history, disclosing to defendant the material he seeks "*might* result in physical or other harm" to others.  Fed. R. Crim. P. 32(d)(3) (emphasis added); <u>cf.</u> <u>Loeper</u>, 132 F. Supp. 2d at 340 ("At times the PSI includes information that could be detrimental to the safety or prosecution of other individuals as well as the defendant should third parties have access to it.").  Therefore, the Court concludes that the PSI background materials should not be disclosed to defendant.

26

Finally, the Court concludes that disclosure in this case would "harm the work of U.S. Probation officers."  <u>Harrison</u>, 2003 WL 21027286, at *3.  "In order to do their jobs, probation officers who are writing PSI's [sic] must seek out relevant information from available sources including the defendant and other knowledgeable persons who are willing to speak freely and candidly."  <u>Loeper</u>, 132 F. Supp. 2d at 339-40.  As the <u>Loeper</u> court noted, the "probation officer does not have subpoena power."  <u>Id.</u> at 340.  It is the Court's view that mandating disclosure of PSI background materials in a case like this would frustrate the work of the probation officers and undoubtedly "have a chilling effect on the willingness of many individuals or entities to disclose what they know."  <u>Id.</u>   Accordingly, the Court denies defendant's Motion for Pre-sentence Investigation Materials and Records.

### E.  Motion to Dismiss Superceding Indictment (Document No. 628)

Defendant argues that the superseding indictment is "jurisdictionally defective" and must be dismissed because the government failed to present to the grand jury "every element" of the felon in possession statute, 18 U.S.C. § 922(g)(1).[13]  Specifically, defendant claims that the government failed to "put forth any testimony <u>or</u> serial numbers" regarding the Bushmaster rifle which he was charged with possessing or "any testimony/evidence of possession concerning this firearm, the form 4473 and its traveling in interstate commerce . . . ."  (Def.'s Mot. to Dismiss

---

[13]  Although defendant does not cite to the felon in possession statute, 18 U.S.C. § 922(g)(1), it is abundantly clear from his Motion that it is the statute to which he refers.  On page four of the Motion, defendant states: "[S]ince the government did not present all of the elements of the statute for the defendant to be indicted on and convicted at trial (*this firearm* considered in other counts at trial considered by the jury) the conviction at trial must be reversed . . . ."  (Def.'s Mot. to Dismiss Superseding Indictment 4.)  On page three of the Motion, defendant details the purported essential elements which he claims were never presented to the grand jury, including the requirement that the firearm travel in interstate travel.  (Def.'s Mot. to Dismiss Superseding Indictment 3.)

Superseding Indictment 3.)  Defendant further argues that the United States Attorney improperly asked leading questions of the government's sole witness and elicited extensive hearsay at the grand jury proceeding.  (Def.'s Mot. to Dismiss Superseding Indictment 2.)  In the event that the Court grants the Motion to Dismiss the Superseding Indictment on these grounds, defendant moves for a rehearing and reconsideration of the Court's denial of his motion to dismiss the original indictment (Document No. 259).  (See Order of Jan. 3, 2007, denying motion to dismiss original indictment).

In response, the government argues that "all of the required elements were clearly met by the testimony presented to the grand jury" and that leading questions may be asked and hearsay evidence presented during grand jury proceedings.  (Gov't's Omnibus Response to Motions to Dismiss the Superceding Indictment 7-9.).  The Court agrees with the government and, thus, denies the Motion to Dismiss the Superseding Indictment.

As a preliminary matter, the Court notes that defendant does not argue that the indictment is defective on its face.  Rather, he argues that errors at the grand jury proceeding rendered the indictment "defective" and, thus, dismissal is required.  The standard for dismissal under such circumstances is difficult to meet.  See Bank of Nova Scotia, 487 U.S. at 254 (dismissal not required unless structural protections of grand jury so compromised as to render proceedings "fundamentally unfair").  The Court determines that defendant has not met that standard because he cannot show that the grand jury proceedings were "fundamentally unfair" or that he was prejudiced by the alleged errors on the part of the government.  Id.  To the contrary, the Court's review of the grand jury proceedings, the relevant law, and the superseding indictment itself leads to the conclusion that the government acted in a proper manner during the grand jury

proceedings.

Defendant's first argument for dismissal of the superseding indictment is that the government failed to present to the grand jury "every element" of the felon in possession statute. (Def.'s Mot. to Dismiss Superseding Indictment 3, 4.)  The Court construes this argument as both attacking the sufficiency of the evidence presented to the grand jury and challenging the adequacy of the prosecution's instructions to the grand jury.  The Court addresses these arguments in turn.

As the Court has already noted, a defendant is not entitled to challenge an indictment on the basis of insufficiency of evidence presented to the grand jury.  See Costello, 350 U.S. at 363-64 (indictments not open to challenge on ground that there was inadequate or incompetent evidence); United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000) (dismissal of indictment may not be predicated on insufficiency of evidence).  The Supreme Court has stated that permitting such challenges would "run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules."  Costello, 350 U.S. at 364; see also United States v. R. Enters., Inc., 498 U.S. 292, 298 (1991) (stating that because "the mission of a grand jury" is not to determine the guilt or innocence of the accused, but only to determine whether or not there is probable cause to prosecute, "many of the rules and restrictions," particularly evidentiary restrictions, that apply at a trial "do not apply in grand jury proceedings").  Moreover, allowing such challenges would result in a "preliminary trial."  See Costello, 350 U.S. at 364.  "Neither justice nor the concept of a fair trial requires such a change." Id.  Accordingly, defendant cannot sustain his challenge to the superseding indictment on the ground that the evidence presented to the grand jury was insufficient.  Id.; see also United States

29

v. Doe, 429 F.3d 450, 453 (3d Cir. 2005) (it is for the grand jury to decide "how much information is enough" to pursue a prosecution).

In any case, defendant's argument that the government failed to put forth "any testimony" concerning the essential elements of the felon in possession statute is demonstrably false.  The elements of possession of a firearm by a convicted felon are: (1) defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year; (2) defendant knowingly possessed a firearm; and (3) defendant's possession of the firearm was in or affecting interstate or foreign commerce.  18 U.S.C. § 922(g)(1).  Neither the serial number nor the Form 4473 are required elements of the offense, and they need not be put before the grand jury to obtain a valid indictment.  See 18 U.S.C. § 922(g)(1).

The Court's review of the grand jury transcripts discloses that the government's sole witness, Special Agent Gallagher, testified before the grand jury that (1) defendant was a convicted felon, (Oct. 24, 2006 Grand Jury Tr. 7, 35, 72-73); (2) defendant knowingly possessed firearms (Oct. 24, 2006 Grand Jury Tr. 11, 19-21, 56-58); and (3) the firearms traveled in interstate commerce "and some of them [in] foreign commerce" (Oct. 24, 2006 Grand Jury Tr. 58).  Thus, contrary to defendant's claim, the record shows that the government presented evidence of "every element" of the statute to the grand jury.

To the extent that defendant's argument challenges the adequacy of the government's instructions to the grand jury, that argument is also rejected.  Following Costello, courts have held that "[c]hallenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an [otherwise valid] indictment."  United States v. Buchanan, 787 F.2d 477, 487 (10th Cir. 1986); United States v. Hart, 513 F. Supp. 657, 658

(E.D. Pa 1981) ("The general rule that an indictment will not be the subject of independent scrutiny and is given a presumption of regularity is just as applicable to a challenge of inadequate instructions as inadequate evidence."); see also Beale et al., 2 Grand Jury Law and Practice § 9:10 ("Although the issue in Costello was a challenge to the nature and sufficiency of the evidence, the principle announced by the Court applies equally to objections based upon the prosecutor's instructions to the grand jury."); LaFave et al., 4 Criminal Procedure § 15.7(g) ("Reviewing a challenge to the prosecutor's explanation of the elements of the crime often requires examination of the proof offered to establish those elements, running directly into the review proscribed by Costello.").

Moreover, courts have held that "[t]he fact that the indictment contains references to each of the elements of the crime charged raises an inference that the grand jury was aware of what elements had to be present before they could return a true bill." Hart, 513 F. Supp. at 659; see also Enigwe 17 F. Supp. 2d at 393 (indictments carry a presumption of regularity).  In this case, the Superseding Indictment clearly alleges each of the elements of the felon in possession statute. (See Superseding Indictment 14.)  That supports the government's position that it adequately instructed the grand jury as to the elements of that crime.  Accordingly, defendant's argument that the Superseding Indictment should be dismissed because the government "did not present all the elements of the statute" must fail.  (See Def.'s Mot. to Dismiss Superseding Indictment 4.)

Next, the Court addresses defendant's argument that the prosecutor employed "fundamentally unfair tactics" during the grand jury proceedings by asking "extensive leading questions" and eliciting "extensive hearsay testimony."  (Def.'s Mot. to Dismiss Superseding Indictment 3.)  This argument is rejected.  It is well established that leading questions and

31

hearsay evidence are permitted in grand jury proceedings.  See United States v. Pantone, 634 F.2d 716, 722 (3d Cir. 1980) (leading questions before grand jury permissible); United States v. Samuel, 1998 WL 401705, at *2 (E.D. Pa. July 1, 1998) (same); Costello, 350 U.S. 363-64 (indictment valid even if based entirely on hearsay).  Accordingly, a motion seeking dismissal of the superseding indictment cannot be based on those grounds.

Although the Court concludes that there were no errors in the grand jury proceedings as alleged by defendant, the Court briefly addresses the law applicable to cases in which errors occurred.  Except in the narrow category of cases involving fundamental errors, "harmless-error inquiry applies to claims of prosecutorial misconduct before a grand jury."  Breslin, 916 F. Supp. at 441.  This is so because of the safeguards provided at trial.  While the grand jury may be "unfettered by technical rules," Costello, 350 U.S. at 364, the petit jury and the trial court are not. See United States v. Shober, 489 F. Supp. 393, 406 (E.D. Pa. 1979) ("Precautionary and specific jury instructions as well as unfailing allegiance to rights and rules are more appropriately reserved for trial.")  In a trial, the "Constitutional rights and derivative prophylactic rules designed to guarantee a fair and impartial verdict" must be observed.  Id.  Therefore, when a petit jury convicts a defendant it has determined "not only that there was probable cause to believe that the defendant[] [was] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt."  Mechanik, 475 U.S. at 72.  For this reason, the Supreme Court has held that "measured by the petit jury's verdict . . . any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."  Id.

On a final note, the Court does not deem it necessary to reconsider its denial of defendant's prior Motion to Dismiss the Indictment (Document No. 259).  Defendant's

arguments in support of reconsideration of that motion are repetitive and have already been fully examined by the court.  See Order dated Jan. 3, 2007; Henry, 2007 WL 656877, at *1 (denying *pro se* Motion for Reconsideration of Motion to Dismiss Indictment).

For all of these reasons, defendant cannot meet the high standard required for dismissal of an indictment, as he has not shown any fundamental unfairness at the grand jury proceeding. Bank of Nova Scotia, 487 U.S. at 257.  Therefore, the Court denies defendant's Motion to Dismiss the Superceding Indictment.[14]

### F.  Supplemental Motion to Dismiss Superceding Indictment (Document No. 629)

In the Supplemental Motion to Dismiss, defendant argues that the superseding indictment must be dismissed and his conviction reversed for the following reasons: (1) the government failed to allege an essential element of the carjacking charge during the grand jury proceedings, namely "the person or presence of another"; (2) the name of the alleged carjacking victim was not presented to the grand jury, thereby precluding the grand jury from making a "rational" decision on an essential element of the carjacking charge; (3) neither the government nor its witness alleged that the Pulaski Savings Bank was insured by the Federal Deposit Insurance Corporation ("FDIC") on the "exact dates" of the robberies; and (4) the government failed to present "any certified insurance certificate provided as an exhibit."  (See Def.'s Supplemental Mot. to Dismiss Superseding Indictment 1-2).  In addition, defendant repeats the previously-

---

[14]  To the extent that this motion (Document No. 628) and the supplemental motion (Document No. 629) challenge the Court's jurisdiction, the Court notes that "where an indictment charges a defendant with violating the laws of the United States, [18 U.S.C. §] 3231 provides the district court with subject matter jurisdiction and empowers it to enter judgment on the indictment."  See U.S. v. Potts, 2007 WL 3036847, at *2 (3d Cir. Oct. 18, 2007); see also 18 U.S.C. § 3231.

made claim that the United States Attorney improperly asked leading questions of the government's witness and thereby "manipulated" the grand jury.  (Def.'s Supplemental Mot. to Dismiss Superseding Indictment 3.)

In response, the government "submits that more than sufficient proof as to all of the elements [of attempted carjacking] was put before the grand jury," and that "the victims names are not a required element of the charge."  (Gov't's Omnibus Response to Motions to Dismiss the Superceding Indictment 10-11.)  As to defendant's allegations concerning the bank robberies, the government states that it has met its burden of proof at "this preliminary stage of prosecution."  (Gov't's Omnibus Response to Motions to Dismiss the Superceding Indictment 11) (referring to the grand jury indictment proceedings).  Finally, the government argues defendant has failed to show any prosecutorial misconduct and that there is no basis for a rehearing on defendant's prior Motion to Dismiss the Indictment (Document No. 259).  The Court agrees and, thus, denies the Supplemental Motion.

Defendant's arguments concerning the "essential elements" of the crimes charged go to the sufficiency of the evidence presented to the grand jury.  (See Def.'s Supplemental Mot. to Dismiss Superseding Indictment 3.)  For the same reasons stated in Section E, *supra*, the Court rejects these arguments.  See Costello, 350 U.S. at 363-64; see also Doe, 429 F.3d at 453 (it is for the grand jury to decide "how much information is enough" to pursue a prosecution).  The indictment itself is "valid on its face," and that is "enough to call for trial of the charge on the merits.'"  Id. at 363.   (See Superseding Indictment at 26, 31, and 33, alleging all elements of attempted carjacking, 18 U.S.C. § 2119, and  armed bank robbery, 18 U.S.C. §2113(d)).

Moreover, the Court's review of the grand jury transcript discloses that the government's

witness provided evidence of all the elements of the carjacking charge against defendant, 18

U.S.C. § 2119, including the "person or presence of another."  (See Oct. 24, 2006 Grand Jury Tr.

71-72.)  While a victim's name was not given, one is not required to obtain a valid indictment on

a carjacking charge.  See R. Enters., Inc., 498 U.S. at 298 (role of grand jury is to determine only

if probable cause exists); see also Doe, 429 F.3d at 453 (it is for the grand jury to decide "how

much information is enough" to pursue a prosecution).

Similarly, to obtain an indictment for armed bank robbery, 18 U.S.C. § 2113(d), the

government is not required to allege or prove to a grand jury that a bank is FDIC-insured on the

"exact dates" of the alleged robbery, or to proffer any certified insurance certificate as an exhibit.

See id.  The statute defines a "bank" as "any member bank of the Federal Reserve System, . . .

including . . . any institution the deposits of which are insured by the Federal Deposit Insurance

Corporation," 18 U.S.C. § 2113(g), and Special Agent Gallagher testified that the Pulaski

Savings Bank was FDIC-insured, a fact which defendant acknowledges.  (See Oct. 24, 2006

Grand Jury Tr. 42; Def.'s Supplemental Mot. to Dismiss Superseding Indictment 2.)  Defendant's

arguments go to the sufficiency of the evidence at the grand jury proceeding and it is well

established that a defendant may not challenge an indictment on that ground.

The Court also rejects defendant's allegation of prosecutorial misconduct.  That

allegation rests on a claim that the prosecutor improperly asked leading questions of the

government's witness.  As noted above, a prosecutor may ask leading questions during grand

jury proceedings.  Pantone, 634 F.2d at 722; Samuel, 1998 WL 401705, at *2.  For all of these

reasons, defendant's Supplemental Motion to Dismiss the Superseding Indictment is denied.

Finally, the Court denies the motion to reconsider its denial of defendant's prior Motion

to Dismiss the Indictment (Document No. 259).  It simply repeats arguments that the Court has already considered and rejected.  See Blue Mountain Mushroom Co., 246 F. Supp. 2d at 398 (repetitive arguments that have been fully examined by the court are not grounds for reconsideration).

## IV.  CONCLUSION

For all of the foregoing reasons, the Court denies defendant's post-trial *pro se* motions (Document Nos. 575, 584, 588, 589, 628, and 629).  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **ANDRE HENRY** | : | **NO.  06-33-01** |
| | : | |

**ORDER**

**AND NOW**, this 17th day of July, 2008, upon consideration of the following *pro se*

motions filed by defendant Andre Henry:

1. Motion for Rehearing of Motions Document Numbers 182 and 253; Suppression (Document No. 575, filed September 19, 2007)

2. Motion for New Trial (Document No. 584, filed October 1, 2007)

3. Motion for Removal of Governments Protective Order at Bureau of Prisons (Document No. 588, filed October 4, 2007)

4. Motion for Presentence Investigation Materials/Records (Document No. 589 filed October 4, 2007)

5. Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231, Violation of the Fifth Amendment and Reconsideration/Rehearing of Motion to Dismiss Indictment Document Number 259 (Document No. 628, filed November 1, 2007)

6. Supplemental Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231 and Rehearing/Reconsideration of Motion to Dismiss Original Indictment (Document No. 259) and Violation of the Fifth Amendment. (Document No. 629, filed November 1, 2007)

and the government's responses thereto (see Document Nos. 617, 618, 619, 620, 676, 698, and

700), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the

following motions:

1.       Motion for Rehearing of Motions Document Numbers 182 and 253; Suppression (Document No. 575, filed September 19, 2007)

2.       Motion for New Trial (Document No. 584, filed October 1, 2007)

3.       Motion for Removal of Governments Protective Order at Bureau of Prisons (Document No. 588, filed October 4, 2007)

4.       Motion for Presentence Investigation Materials/Records (Document No. 589 filed October 4, 2007)

5.       Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231, Violation of the Fifth Amendment and Reconsideration/Rehearing of Motion to Dismiss Indictment Document Number 259 (Document No. 628, filed November 1, 2007)

6.       Supplemental Motion to Dismiss Superceeding Indictment for Lack of Jurisdiction Under 18 U.S.C. § 3231 and Rehearing/Reconsideration of Motion to Dismiss Original Indictment (Document No. 259) and Violation of the Fifth Amendment. (Document No. 629, filed November 1, 2007)

are **DENIED.**

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**

**JAN E. DUBOIS, J.**