**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| ANDRE HENRY | : | NO.  06-33-01 |
| | : | |

DuBOIS, J.                                                    JULY 17, 2008

<u>MEMORANDUM</u>

On February 22, 2007, a jury convicted defendant Andre Henry of crimes related to eight robberies of fast food restaurants; the straw purchase, possession, and use of assault weapons and other firearms; two armed bank robberies; conspiracy to commit a third armed bank robbery; an attempted carjacking that involved shots fired at a police officer; and solicitation to commit murder of a federal grand jury witness.  Presently before the Court is defendant's *pro se* Motion for a Retrospective Competency Hearing Pursuant to 18 U.S.C. § 4241(a)(b) and Order Permitting Examination at Federal Detention Center.  For the reasons that follow, the motion is denied.

**I.        BACKGROUND**

The background of this case is set forth in the Court's previous opinions.  See <u>United States v. Henry</u>, 472 F. Supp. 2d 649, 651 (E.D. Pa. 2007) (denying motions to suppress); <u>United States v. Henry</u>, 2007 WL 419191, *1 (E.D. Pa. Feb. 2, 2007) (granting Motion for an Order Declaring the Defendant in Contempt of Court for Failure to Provide Palm Prints Pursuant to Court Order); <u>United States v. Henry</u>, 2007 WL 419197, *1 (E.D. Pa. Feb. 2, 2007) (denying *pro*

1

*se* motion to suppress); <u>United States v. Henry</u>, 2007 WL 656877, *1 (E.D. Pa. Jan. 30, 2007)

(denying *pro se* motion for reconsideration of order denying motion to dismiss indictment);

<u>United States v. Henry</u>, 2007 WL 219885, *1 (E.D. Pa. Jan. 26, 2007) (denying motions for

subpoena).  Accordingly, the Court sets forth only the background necessary to resolve the

motion addressed in this Memorandum.

On October 24, 2006, defendant was charged in a 28-count Superseding Indictment with

conspiracy to make false statements to a federal firearms licensee, in violation of 18 U.S.C. § 371

(Count 1); making false statements to a federal firearms licensee, in violation of 18 U.S.C.

§ 924(a)(1)(A) (Counts 2, 3, 5, 7, 9); felon in possession of a firearm and ammunition, in

violation of 18 U.S.C. § 922(g)(1) (Counts 4, 6, 8, 10, 26); Hobbs Act robbery, in violation of 18

U.S.C. § 1951 (Counts 11, 12, 13, 14, 15, 18, 19, 20); attempted carjacking, in violation of 18

U.S.C. § 2119 (Count 16); carrying and using a firearm during and in relation to a crime of

violence, in violation of 18 U.S.C. § 924(c) (Counts 17, 22, 24); armed bank robbery, in violation

of 18 U.S.C. § 2113(d) (Counts 21, 23); conspiracy to commit armed bank robbery, in violation

of 18 U.S .C. § 371 (Count 25); possession of body armor, in violation of 18 U.S.C. § 931 and

921(a)(35) (Count 27); solicitation to commit murder, in violation of 18 U.S.C. § 373 (Count

28); and aiding and abetting, in violation of 18 U.S.C. § 2.

At trial, the Court bifurcated Count 27 of the Superseding Indictment, the count charging

possession of body armor. Trial on Counts 1 through 26 and Count 28 commenced on February

5, 2007. On February 22, 2007, a jury found defendant guilty on each of these counts. The

government then withdrew the charges in Count 27.

II.     **LEGAL STANDARD**

Section 4241 of Title 18 of the United States Code provides, in part:

> At any time after the commencement of a prosecution for an offense *and prior to the sentencing of the defendant*, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is *reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.*

18 U.S.C. § 4241(a) (emphasis added).[1]

The Third Circuit has instructed that a court "must examine the unique circumstances of the case and decide whether the defendant '(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial.  If either prong is not met, a court has reasonable cause to order a competency hearing.'" United States v. Jones, 336 F.3d 245, 256 (3d Cir. 2003) (quoting United States v. Leggett, 162 F.3d 237, 242 (3d Cir.1998)).

Factors to be considered in making a determination about competency include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial."  See Leggett, 162 F.3d at 242 (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)). Other factors that are relevant to the determination include an attorney's representation about his client's competency, as well as the court's personal observation of the

---

[1] Section 4241(b) provides that "[p]rior to the date of the [competency] hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c)."  18 U.S.C. § 4241(b).

defendant's demeanor in the courtroom.  See Jones, 336 F.3d at 256-59.  The Third Circuit has

stated that a competency determination is a fact-intensive inquiry that depends on the unique

circumstances of the case. See United States v. Renfroe, 825 F.2d 763, 767 (3d Cir. 1987)

("Whether a hearing is required is . . . not susceptible to generalized concepts, or theories, but

must be based upon the facts of the particular case.").  "There are . . . no fixed or immutable

signs which invariably indicate the need for further inquiry to determine fitness to proceed; the

question is often a difficult one in which a wide range of manifestations and subtle nuances are

implicated."  Drope, 420 U.S. at 180.

## III.   DISCUSSION

The instant motion is the latest of many competency and mental health-related motions

that defendant has filed throughout the course of the proceedings.  The Court briefly explains the

history of those motions and its decisions regarding those motions below.  The Court then

addresses the instant motion.

### A.  Pre-Trial Competency Motions

On January 25, 2007, eight days before the start of defendant's trial, defendant filed a *pro*

*se* Motion for Determination of Mental Competency to Stand Trial and Determination of the

Existence of Insanity at the Time of the Offense (Document No. 337).  Four days later, the

government filed a Motion for an Order for a Pretrial Psychiatric or Psychological Examination

and for an Order Declaring Competency (Document No. 348).  The Court held a hearing on the

matter on January 29, 2007.  At that hearing, the government stated that it was able to obtain a

psychiatrist, Dr. John O'Brien, to evaluate defendant and issue a report on defendant's

competency prior to trial.  In response, defendant, through counsel, stated his belief that "he's

entitled to an expert that's appointed by the Court as opposed to one that's selected by the Government." (Jan. 29, 2007 Hr'g Tr. 6.)  The Court, responding to defendant's objection, stated that Dr. O'Brien was well known to the Court and that he "has testified on both sides of almost every issue in criminal cases for the defense and for the Government so I have no hesitancy in appointing Dr. O'Brien." (Jan. 29, 2007 Hr'g Tr. 6.)   Defense counsel also stated "[f]or the record" that "I have myself used Dr. O'Brien in the past, although it was some time ago, as a defense expert." (Jan. 29, 2007 Hr'g Tr. 6.)

Following the hearing, the Court ordered defendant to "immediately submit to a psychiatric or psychological examination by Dr. John L. O'Brien" to determine, *inter alia*, whether there was reasonable cause to believe that defendant suffered "from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (See Order of Jan. 29, 2007.)  Dr. O'Brien observed defendant in court on January 29, 2007 and examined defendant at the Federal Detention Center in Philadelphia on January 30, 2007.  (See Feb. 2, 2007 Hr'g Tr. 20.)

On February 2, 2007, the Court conducted a second hearing on the competency motions. At that hearing, Dr. O'Brien testified that, based on his clinical examination of defendant and his observations of defendant in court on January 29, 2007, he concluded that defendant "is competent to stand trial, that he is able to understand the nature and object of the proceedings and to participate in those proceedings if he chooses to do so." (Feb. 2, 2007 Hr'g Tr. 24-25, 29.) Expanding on that opinion, Dr. O'Brien stated that defendant demonstrated "a capability of understanding legal principles" and that he possessed an ability to assist his attorney. (Feb. 2,

2007 Hr'g Tr. 29.)  Significantly, Dr. O'Brien also testified that defendant had a "propensity to exaggerate or feign symptoms" and that his behavior during the evaluation "came across more along the lines of game playing than any kind of condition [or] illness . . . ."  (Feb. 2, 2007 Hr'g Tr. 34.)

Defendant also testified during the February 2, 2007 hearing.  On direct examination, he testified as follows:

Q:          All right.  Well, I'm trying to determine whether or not there's something mentally that prevents you from understanding what you're charged with, is there?

Defendant:   Are you asking me do I have a mental illness?

Q:          Okay, yes, do you have a mental illness?

Defendant:   I don't think I'm ill.

Q:          Okay.  Do you have any mental problems that you'd like to share with the Court?

Defendant:   I don't think I have a mental problem either.

(Feb. 2, 2007 Hr'g Tr. 46.)

At the conclusion of the hearing, the Court granted the government's motion to declare defendant competent.  (See Feb. 2, 2007 Hr'g Tr. 73; Order of Feb. 2, 2007.)  The Court based its ruling on (1) Dr. O'Brien's testimony, (2) its own observations of the defendant, and (3) consideration of defendant's arguments, both in court and as presented in his submissions.  With regard to defendant's arguments, the Court stated that defendant's *pro se* motions

demonstrate to me someone who is smart, someone who understands the nature and consequences of the charges against him, and someone who can assist properly in his defense.  As a matter of fact, with respect to assistance in the defense, you're [referring to defendant] probably capable of and you've

6

demonstrated to me by your pro se motions and what you've said to me in court
that you are a big assistance to counsel; counsel might not always agree with you,
but that doesn't mean you're not able to assist properly in your defense.

(Feb. 2, 2007 Hr'g Tr. 73.)

### B.  Post-Conviction Motions for Mental Health Evaluations

Several months after his conviction on February 22, 2007, defendant filed two motions

relating to competency.  The first motion, entitled Application for Appropriations to Acquire

Private Psychiatric Examination/Professional Opinion (Document No. 518), was filed on July 31,

2007.  The second motion, entitled Motion for Mental Health/Psychiatric Psychological

Evaluation (Document No. 524), was filed on filed August 3, 2007.  In the second motion

(Document No. 524), defendant argued that the Court should order a psychiatric or psychological

evaluation "consistent with 18 U.S.C. § 4241 and/or § 4242" on the basis of the following:

> [defendant's] prior mental health history - coupled with the apparent episodes of a
> psychotic nature which began to re-occur on or about June 10, 2007.  (Said
> episodes included extreme self-injuries of virtually slicing his wrists, arm and
> throat. Manufacturing a noose, and decorative "finger-painting" with his feces.)
> Lapsing into delusional beliefs of judicial conspiratorial (being jointly out to kill,
> through poisoning him and possibly members of his family).  All matters to great
> concern, which cannot be construed as normal behavior.

(Def.'s Mot. for Mental Health Psychiatric/Psychological Eval. 1-2.)

On August 8, 2007, the Court held a hearing on those *pro se* motions.  Defendant stated at

the hearing that he had, in the past, been diagnosed with mental illness and that he informed the

Court at the start of the case that he had "psychiatric illnesses."  (Aug. 8, 2007 Hr'g Tr. 35.)

Upon questioning by the Court, defense counsel stated that defendant "certainly appears

to know what is going on right now and if he chooses to do so, could assist me in defending

him."  (Aug. 8, 2007 Hr'g Tr. 40.)  He further stated: "I think he understands what is going on.

7

That's the test for whether he is legally competent. . . . I can't stand up here in good faith and tell you that I see a reason why we need to have another competency exam." (Aug. 8, 2007 Hr'g Tr. 41-42.) The government concurred in defense counsel's opinion and argued that the motions were part of defendant's strategy to "thwart the efforts of moving the case along." (Aug. 8, 2007 Hr'g Tr. 34.)

After hearing from the parties, the Court concluded that defendant "understand[s] the nature and the consequences of the charges against [him]" and "demonstrated that if [he] want[s] to, [he] can assist counsel reasonably in the defense of the case." (Aug. 8, 2007 Hr'g Tr. 43.) The Court further concluded that defendant has "demonstrated absolutely nothing that tells [the Court] in the least bit that [defendant is] incompetent." (Aug. 8, 2007 Hr'g Tr. 43.) Accordingly, the Court denied the motions.

After the Court announced its ruling, defendant argued that he had been seeing a prison staff psychiatrist "since post trial" and that he had a "record" which should be taken into consideration. (Aug. 8, 2007 Hr'g Tr. 44.) The Court acknowledged that fact and stated that it had requested a "status summary" from the chief psychologist at the Bureau of Prisons ("BOP"), Dr. Andrea Boardman, which was received on August 8, 2007, and would read that summary for the record. (Aug. 8, 2007 Hr'g Tr. 45-46.) When defendant objected that he had not been evaluated by Dr. Boardman, but rather by a psychiatrist, the Court noted that the status summary took into account defendant's "interviews and evaluations by the psychiatrist at the Bureau of Prisons." (Aug. 8, 2007 Hr'g Tr. 46.) The Court then read into the record the status summary:

> [Defendant] was referred due to his pattern of disruptive and self-injurious behavior and his history of psychiatric treatment in institutional settings. During his first appointment, Inmate Henry reported experiencing psychotic symptoms,

8

such as hearing voices and seeing things that are not there.  However, these symptoms, which would suggest possible schizophrenia, were not reported or observed in a manner consistent with genuine psychosis. . . . It is my clinical impression that Mr. Henry's symptoms can best be understood as consistent with a personality disorder consisting of paranoid anti-social borderline features. Therefore, although inmate Henry is **not believed to suffer from Schizophrenia**, he was prescribed antipsychotic medication to potentially alleviate some of his suspicious thinking, agitation, and resulting behavior problems. . . .

[Defendant] has not engaged in disruptive behavior since July 20th, 2007 and has maintained adequate adjustment in the Special Housing Unit since that time. . . . I was recently advised by staff that he enlisted the assistance of another inmate in preparing a motion to request a competency evaluation.  If he is motivated to delay the process of his case by raising mental health concerns related to his competency or responsibility, he is likely to present with odd, paranoid or disruptive behavior in court.

(Aug. 8, 2007 Hr'g Tr. 46-48) (emphasis added).

After reading that passage from Dr. Boardman's report, the Court stated that:

there is only one thing wrong with this report. [Dr. Boardman] predicted incorrectly.  She said you are likely to present with odd, paranoid or disruptive behavior in court today and you did not.  You behaved as you behaved before me up to this point in a very rational manner . . . .

(Aug. 8, 2007 Hr'g Tr. 48.)

Following the hearing, the Court issued an order denying defendant's motions (Document Nos. 518 and 524) "for the reasons stated on the record."  (See Order of Aug. 8, 2007.)

### C.  Instant Motion for a Retrospective Competency Hearing Pursuant to 18 U.S.C. § 4241(a)(b) and Order Permitting Examination at Federal Detention Center

Defendant's instant motion seeks "retrospective and present day competency examinations" pursuant to "18 U.S.C. § 4241(a)(b), U.S.C.A. 6 and 14."  (Def.'s Mot. for Competency Hr'g 1.)  The stated basis for defendant's motion is that he continues to exhibit symptoms of "incompetency," which he claims also existed prior to and during his trial.  (Def.'s Mot. for Competency Hr'g 3.)  These symptoms include "incoherent speech, disordered thought

9

process, hallucinations, delusional beliefs, [and] extreme paranoia . . . ." (Def.'s Mot. for Competency Hr'g 3.) Other "symptoms" include defendant's behavior at trial, including his attempts to smuggle weapons into the courtroom and his making of "firing gestures" at the prosecution. (Def.'s Mot. for Competency Hr'g 2-3.)

In addition, defendant avers that since his conviction, he has been diagnosed with, *inter alia*, "an AXIS 1 (primary/principle psychiatric illness) of paranoid schizophrenia and post traumatic stress disorder" and has been prescribed, and is using, an "antipsychotic medication" called Risperdal. (Def.'s Mot. for Competency Hr'g 4.) He also claims that he has attempted suicide multiple times and that, for a while, he stopped eating or drinking because he believed the Court and the government were attempting to poison him. (Def.'s Mot. for Competency Hr'g 3.) Further, defendant alleges that he was "examined and diagnosed in 1996" as suffering from "paranoid schizophrenia and possible severe depression" and that he was found incompetent during a proceeding in Philadelphia Family Court. (Def.'s Mot. for Competency Hr'g 4.) On the basis of these facts, defendant submits that he has made "a threshold showing of 'reasonable cause' of the [his] incompetency and decompensation which further controverts previous examinations and testimony." (Def.'s Mot. for Competency Hr'g 5.)

The government's response to the instant motion is set forth in two separate letters (Document Nos. 579, filed Sept. 25, 2007, and 693, filed June 26, 2008). In its initial response, the government addressed only that part of the motion that sought a "retrospective" competency hearing and examination. The government argued that the motion should be denied because defendant "has asserted no new facts nor does he cite any applicable statutory authority or case law that would permit a re-hearing on this matter." (Gov't's Sept. 25, 2007 Ltr. Resp. 1.) The

10

government characterized defendant's motion as a motion for reconsideration and argued that

defendant's "disagreement with the Court's pre-trial ruling on his competency motion should be

raised through the normal appellate process, not through a motion for reconsideration."  (Gov't's

Sept. 25, 2007 Ltr. Resp. 2) (citing United States v. Pellulo, 971 F. Supp. 159, 163 (D.N.J. 1997)

(for proposition that a motion for reargument should not be used as a vehicle to reargue matters

already considered) (aff'd in part, rev'd in part, 399 F.3d 97 (3d Cir. 2005)).

  In its supplemental response, submitted on June 26, 2008, the government addresses the

motion more broadly and again argues that it should be denied without a hearing.  The

government asserts in that response that defendant's behavior and demeanor throughout the

course of the proceedings, together with his "dozens of *pro se* motions," demonstrate "a capacity

to assist in his own defense and a more than sufficient understanding of the nature of the

proceedings against him."  (Gov't's June 26, 2008 Ltr. Resp. 2.)  In support of that argument, the

government notes that defendant has appeared at "numerous pre-trial motion[] hearings, a prior

competency hearing, a three-week trial, and post-trial motion[] hearings," and that the Court

itself has commented "numerous times that the defendant is articulate, intelligent, and raises

coherent and legitimate legal issues."  (Gov't's June 26, 2008 Ltr. Resp. 2.)  The government

further notes that, in these proceedings, defendant conversed with his attorney in court and when

he disagreed with him, with permission of the Court, he presented his own legal arguments

directly to the Court.  (Gov't's June 26, 2008 Ltr. Resp. 2.)

  In addition, the government submits that while defendant has, in the past, "engaged in

'self-injurious' behavior by 'cutting' himself and by refusing to eat or drink," "he has not

engaged in any 'self-injurious' behavior" since the filing of the instant motion in September,

11

2007.  (Gov't's June 26, 2008 Ltr. Resp. 2.)   On that issue, the government obtained and

submitted to the Court "recent records . . . from the Federal Detention Center" which show that,

since defendant began seeing a staff psychiatrist, Dr. Edulfo Gonzales, defendant has been

diagnosed "with nothing more than depression."[2]  (Gov't's June 26, 2008 Ltr. Resp. 2.)

Finally, the government argues that the Court should take into consideration the opinion

of Dr. O'Brien, who previously determined that defendant "provided exaggerated or feigned

responses to questions which reflected a propensity on his part to manipulate, or even malinger,

symptoms . . . ."  (Gov't's June 26, 2008 Ltr. Resp. 3, quoting Feb. 1, 2007 Opinion Ltr. of Dr.

John S. O'Brien at 3; see also Feb. 2, 2007 Hr'g Tr. 34.)  "The government submits that [this] is

exactly what the defendant continues to attempt to do, by way of filing this pro se motion."

(Gov't's June 26, 2008 Ltr. Resp. 3.)  "In sum, it is the government's position that there is simply

no basis for this court to order a competency examination," as defendant "has failed to set forth

any indicia of incompetence."  (Gov't's June 26, 2008 Ltr. Resp. 3.)

The Court considers the motion in two parts.  First, the Court addresses that part of the

motion that seeks a "retrospective" hearing and examination.  The Court then addresses the part

of the motion that seeks a "present-day" hearing and examination.

### i.  Motion for Retrospective Competency Hearing and Examination

Defendant seeks a retrospective competency hearing and examination on the ground that

he was incompetent at the time of his trial and "throughout the record of proceedings . . . ."

(Mot. for Competency Hr'g 3.)  As evidence "suggest[ing] incompetency," defendant points to

---

[2]  The government attached to its response several medical reports by Dr. Gonzales, the
first of which is dated October 23, 2007.

12

his "irrational behavior" during and following his trial, including his attempt to smuggle weapons into the courthouse and his "making [of] firing gestures" towards the United States Attorneys. (See "Statement of Facts" attached to Def.'s Mot. for Competency Hr'g.)  Defendant avers that "the facts give a threshold showing of 'reasonable cause' of his incompetency," notwithstanding "previous examinations and testimony."  (Mot. for Competency Hr'g 5.)

Defendant cites two cases, including one from the Third Circuit, for the proposition that the Court can and should order a retrospective competency hearing in his case.  See Renfroe, 825 F.2d at 763; United States v. Mason, 52 F.3d 1286, 1293 (4th Cir. 1995).  Those cases do not support defendant's position.  What those cases, and others, show is that a retrospective competency hearing and examination *may* be granted where there has been "some constitutional defect regarding the defendant's competency" in the first place. See Appel v. Horn, 250 F.3d 203, 217-18 (3d Cir. 2001); Renfroe, 825 F.2d at 767; Mason, 52 F.3d at 1293.  In Renfroe, the district court denied an oral motion for a competency hearing despite strong evidence suggesting the defendant's incompetence.  See 825 F.2d at 767.  In Mason, the district denied defendant's motion for a competency evaluation on the ground that the evidence presented did not "*conclusively* demonstrate[] Defendant's mental incompetency."  See 52 F.3d at 1293 & n.9 (emphasis added).  In both cases, the courts of appeals ruled that the district courts erred by not adhering to the "reasonable cause" standard provided in § 4241(a).

In this case, there has been no "constitutional defect" regarding defendant's competency. Unlike the defendants in Renfroe and Mason, defendant received a pre-trial competency examination and hearing in accordance with the procedures outlined in 18 U.S.C. §§ 4241(a) and (b).  Nothing about that examination or hearing was improper.  See 18 U.S.C. § 4247(b)-(d).

13

Defendant's examination was conducted by a court-appointed, licensed psychiatrist, Dr. John

O'Brien, who prepared a report as required by statute.  See id. at § 4247(b),(c).  At the hearing,

defendant was "afforded an opportunity to testify, to present evidence, to subpoena witnesses on

his behalf, and to confront and cross-examine witnesses who appear at the hearing."  Id. at

§ 4247(d).

Further, the Court carefully considered the facts of defendant's case before reaching

a decision on his competency.  In addition to the medical opinion of Dr. O'Brien, the Court took

into consideration defendant's testimony, his behavior and demeanor during court proceedings,

and the quality and character of his *pro se* motions.  (Feb. 2, 2007 Hr'g Tr. 71-74)  Only after the

examination by Dr. O'Brien and a hearing on the matter did the Court determine that defendant

was competent to stand trial.  Under these circumstances, it cannot be said that there was a

"constitutional defect regarding the defendant's competency."  Appel, 250 F.3d at 217-18.

Therefore, the Court concludes that there is no need for a retrospective determination of

defendant's competency.

The Court agrees with the government that what defendant seeks in his motion for a

"retrospective competency hearing" is reconsideration of the Court's initial determination that he

was competent to stand trial.  Three situations justify granting a motion for reconsideration: (1)

an intervening change in the controlling law; (2) the availability of new evidence not available

when the court dismissed the prior petition; or (3) the need to correct a clear error of law or fact

or to prevent "manifest injustice."  Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d

Cir.1999); Dimensional Music Publ., LLC v. Kersey, 2006 U.S. Dist. LEXIS 47488, 2006 WL

1983189, *1 (July 12, 2006).  "A motion for reconsideration is not to be used as a means to

reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).   The reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly.  See  D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999); see also Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995); Porter v. NationsCredit Consumer Discount Co., 2006 U.S. Dist. LEXIS 41947, 2006 WL 1737544, *2 (E.D. Pa. June 22, 2006).

Defendant has not established any of the grounds for reconsideration of the court's pre-trial competency determination.  He has not cited to an intervening change in controlling law, nor presented any new evidence, not previously available, which demonstrates that he was incompetent within the meaning of § 4241 at the time of his trial.  Furthermore, defendant has not shown any "clear error of law or fact" or "manifest injustice" resulting from the Court's initial determination on his competency.  Rather, defendant is attempting to "relitigate a point of disagreement" between him and the Court and that is not allowed.  See Ogden, 226 F. Supp. 2d at 606.  Accordingly, that part of defendant's pro se motion that seeks a retrospective competency hearing and examination is denied.

### ii. Motion for Present-day Competency Hearing and Examination

The Court also denies that part of the motion that seeks a "present day" competency hearing and examination.  The factual allegations and evidence presented do not establish reasonable cause that defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C.

§ 4241.  Indeed, prior medical opinions, the defendant's behavior and demeanor during court proceedings, and his written submissions evince the fact that defendant is competent within the meaning of § 4241.

As noted above, defendant claims that he has been diagnosed with "an AXIS 1 (primary/principle psychiatric illness) of paranoid schizophrenia and post traumatic stress disorder."[3]  (Def.'s Mot. for Competency Hr'g 4-5).  He further claims that he has been prescribed, and is currently taking, the "antipsychotic medication" Risperdal.  Attached to defendant's motion were the following documents: (1) an informational sheet on the drug commercially known as Risperdal; (2) a print-out from the website MedicineNet.com discussing Risperdal, which apparently has a generic name, risperidone; (3) a print-out from a website called psychcentral.com, which also discusses Risperdal (risperidone); (4) two Inmate Injury Assessment and Followup forms dated June 10, 2007 and June 16, 2007, respectively; and (5) a Consultation Sheet which contains a Consultation Report by Dr. Francene W. Black dated June 12, 2007.

Upon review of these documents and the motion itself, and upon examination of the government's submissions and the evidence in this case, the Court concludes that defendant has not established reasonable cause to believe that he is presently incompetent within the meaning of § 4241(a).  It bears repeating that the standard for determining whether reasonable cause exists is whether the defendant has the capacity to assist in his own defense and comprehends the nature and possible consequences of the proceedings against him.  Jones, 336 F.3d at 256.  In deciding

---

[3]  According to defendant, that diagnosis was made by a contract psychiatrist at the BOP in June, 2007.

this question, the Court must examine the unique circumstances of the case; there are "no fixed or immutable signs which invariably indicate the need for further inquiry . . . ." Drope, 420 U.S. at 180.

At the August 8, 2007 hearing, the Court addressed the state of defendant's mental and physical health in and around June, 2007, the time period to which the medical records submitted by defendant in his motion pertain. Specifically, the Court considered the alleged suicide attempts, the defendant's "irrational behavior" in court, the existence or non-existence of schizophrenia, defendant's belief in a "judicial conspiracy," and the prescription of antipyschotic medication. (See Aug. 8, 2007 Hr'g Tr. 39, 42, 46-49.) The Court also considered at the August 8, 2007 hearing Dr. Boardman's status summary which covered the substance of what was set forth in the medical records submitted by defendant in the pending motion. After weighing all of that information, and other factors, the Court concluded that defendant was competent to proceed with his case. (See Order of Aug. 8, 2007.) Nothing about the instant motion or its attachments persuades the Court that defendant has since become or presently is incompetent.

Indeed, other factors suggest that defendant understands the nature and consequences of the proceedings against him and can assist properly in his defense. Among these factors are the prior medical opinion of Dr. O'Brien, which the Court addressed above; defendant's demeanor in the courtroom before and after the filing of the instant motion; and defendant's written submissions to the Court. See Leggett, 162 F.3d at 242 (stating that factors to be considered in determining competency include defendant's behavior, defendant's demeanor at trial, and any prior medical opinion on competence to stand trial).

The Court last had an opportunity to observe defendant's behavior and demeanor during a

hearing on defendant's Motion for New Counsel on June 12, 2008. During that hearing, defendant exhibited rational behavior and provided thoughtful answers to the Court's questions. For example, in response to questions about his motion, defendant provided prepared, point-by-point arguments which showed that defendant understood the nature and the consequences of the hearing. (See June 12, 2008 Mot. Hr'g 14-22.) Similarly, defendant's answers showed that he can assist properly in his defense. (See June 12, 2008 Mot. Hr'g 14-22.)

Defendant's *pro se* submissions also indicate that he is competent to proceed in this case. Many, if not most, of defendant's *pro se* motions are well written, well reasoned and cite to the leading cases on the issues raised. In the instant motion, for example, defendant cited the leading cases from the Supreme Court and the Third Circuit, and analogous cases from other circuits. (See Def.'s Mot. for Competency 5, citing Drope, 420 U.S. at 183; Mason, 52 F.3d at 1293, and Renfroe, 25 F.2d at 763.) Although, ultimately, the Court rejected defendant's arguments under those cases, the arguments demonstrated that defendant is more than capable of understanding the nature and consequences of the proceedings against him and that he can assist properly in his defense. The same is true of the myriad of other motions filed by defendant since his last competency hearing.

Although defendant has emphasized his history of mental health problems as a reason for granting the instant motion, the Court considers that history in light of other evidence reflecting on his mental state. Defendant's recent BOP medical records disclose that defendant "denies suicidal or homicidal ideation" and that there is "[n]o evidence of psychosis."[4] (See Bureau of

---

[4] A report dated March 27, 2008 also states: "no evidence of psychosis." (See Medical Report of Dr. Edulfo Gonzales dated March 27, 2008, attached to Gov't's Supplemental Resp., Document No. 693.)

Prisons Health Services Clinical Encounter reports dated May 14, 2008 and June 24, 2008, attached to Gov't's Supplemental Resp., Document No. 693.)   As recently as June 24, 2008, defendant exhibited "no overt delusional ideation" and "[d]id not verbalize hallucinations experiences . . . ."   (Bureau of Prisons Health Services Clinical Encounter report dated June 24, 2008, attached to Gov't's Supplemental Resp., Document No. 693.)   Further, defendant admitted to "not taking psychotropic medication consistently."   (Bureau of Prisons Health Services Clinical Encounter report dated June 24, 2008, attached to Gov't's Supplemental Resp., Document No. 693.)   These facts contradict the claims asserted in defendant's motion.

The Court also considers the statements by Dr. O'Brien and Dr. Boardman regarding defendant's propensity to feign or exaggerate symptoms.   Dr. O'Brien noted during the February 2, 2007 hearing that defendant's behavior was more akin to game-playing "than any kind of condition [or] illness . . . ."   (Feb. 2, 2007 Hr'g Tr. 34.)   Similarly, Dr. Boardman warned in her report that "[i]f [defendant] is motivated to delay the progress of his case by raising mental health concerns related to his competency or responsibility, he is likely to present with odd, paranoid, or disruptive behavior in court."   (See Aug. 8, 2007 Hr'g Tr. 47-48.)

Finally, the Court notes that there have been no reported incidents of self-injurious behavior by defendant since the Court's August 8, 2007 competency hearing.   All of these facts support the Court's conclusion that there is no reasonable cause to believe that defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent . . . ."   18 U.S.C. § 4241(a).   Accordingly, the court denies that part of the motion that seeks a "present day" competency hearing and examination.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court denies defendant's *pro se* Motion for a

Retrospective Competency Hearing Pursuant to 18 U.S.C. § 4241(a)(b) and Order Permitting

Examination at Federal Detention Center.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **vs.** | : | |
| | : | |
| **ANDRE HENRY** | : | **NO.  06-33-01** |
| | : | |

**ORDER**

     **AND NOW**, this 17th day of July, 2008, upon consideration of defendant's *pro se* Motion for a Retrospective Competency Hearing Pursuant to 18 U.S.C. § 4241(a)(b) and Order Permitting Examination at Federal Detention Center (Document No. 571, filed September 11, 2007), and the Government's Letter Response (Document No. 579, filed September 25, 2007) and Supplemental Letter Response (Document No. 693, filed June 26, 2008), for the reasons set forth in the attached Memorandum,  **IT IS ORDERED** that defendant's *pro se* Motion for a Retrospective Competency Hearing Pursuant to 18 U.S.C. § 4241(a)(b) and Order Permitting Examination at Federal Detention Center is **DENIED.**

                                  **BY THE COURT:**

                                  **/s/ Honorable Jan E. DuBois**
                                  **JAN E. DUBOIS, J.**