**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 06-33-01 |
| v. | : | |
| | : | CIVIL ACTION |
| ANDRE HENRY | : | NO. 11-1101 |
| | : | |

DuBOIS, J.                                                    August 3, 2011

**M E M O R A N D U M**

## I.  INTRODUCTION

Andre Henry was convicted in 2007 of charges stemming from false statements made to a federal firearms licensee; being a felon in possession of a firearm and ammunition; eight counts of Hobbs Act robbery; attempted carjacking; three counts of carrying and using a firearm during and in relation to a crime of violence; charges arising out of a pair of armed bank robberies and a conspiracy to commit a third armed bank robbery; and solicitation to commit murder.  He is serving a 982-month sentence in federal prison.  Currently before the Court is Henry's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  For the reasons that follow, the motion is denied without an evidentiary hearing.

## II.  BACKGROUND

The background of this case is set forth in detail in the Court's previous opinions.  See United States v. Henry, 472 F. Supp. 2d 649 (E.D. Pa. 2007) (denying motions to suppress); United States v. Henry, No. 06-33-01, 2007 WL 419191 (E.D. Pa. Feb. 2, 2007) (granting Motion for an Order Declaring the Defendant in Contempt of Court for Failure to Provide Palm Prints Pursuant to Court Order); United States v. Henry, No. 06-33-01, 2007 WL 419197 (E.D.

-1-

Pa. Feb. 2, 2007) (denying pro se motion to suppress); United States v. Henry, No. 06-33-01, 2007 WL 656877 (E.D. Pa. Jan. 30, 2007) (denying pro se motion for reconsideration of order denying motion to dismiss Superseding Indictment); United States v. Henry, No. 06-33-01, 2007 WL 219885 (E.D. Pa. Jan. 26, 2007) (denying motions for subpoenas). Accordingly, the Court recites in this Memorandum only those facts necessary to explain the Court's rulings on the instant motion.

On April 25, 2003, Henry was released on parole after serving a prison sentence on a state-court robbery conviction. In September 2003, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") conducted a compliance inspection of Abington Gun Sports in Willow Grove, Montgomery County, Pennsylvania. That inspection and subsequent investigation uncovered evidence that Henry had driven a woman named Nakita McQuay to the store for the purpose of purchasing five guns for him, including an AK-47 semiautomatic assault weapon. Henry was prohibited from purchasing the guns himself because he was a convicted felon.

On October 20, 2003, ATF Special Agent Gerard Gallagher contacted Donna Henry, supervisor of the parole office to which Henry's case was assigned, and notified her of Henry's participation in the straw purchases. Gallagher informed Donna Henry that the sales took place at Abington Gun Sports and that Henry had traveled there twice. Donna Henry testified that she knew Abington Gun Sports was located outside Philadelphia.

The next day, October 21, 2003, Henry unexpectedly arrived at the parole office and requested that a tracking bracelet be removed from his ankle. Based on the information from Agent Gallagher, parole agents detained defendant, searched the defendant and searched his car. In the car, they found a bumper sticker from Abington Gun Sports, a Pennsylvania turnpike toll

receipt and what appeared to be three pipe bombs.  Authorities did not find explosives in the pipes.

Henry subsequently admitted to Agent Gallagher that he had bought six or seven firearms through a straw purchaser and that several of the guns were stored at his residence.  Based on that information, parole agents conducted a search of Henry's residence.  The agents seized a large quantity of evidence and contraband during the search, including various firearms and ammunition and more than $14,000 in dye-stained U.S. currency.

In January 2006, a grand jury sitting in this district returned a 28-count Indictment against Henry and six co-defendants.  Nine months later, in October 2006, a grand jury returned a 28-count Superseding Indictment against Henry and five co-defendants.  The Superseding Indictment charged Henry with crimes relating to false statements made to a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 371 (Counts 1, 2, 3, 5, 7, 9); five counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts 4, 6, 8, 10, 26); eight counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts 11, 12, 13, 14, 15, 18, 19, 20); attempted carjacking, in violation of 18 U.S.C. § 2119 (Count 16); three counts of carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 17, 22, 24); two counts of armed bank robbery and a count of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. §§ 2113(d) and 371 (Counts 21, 23, 25); possession of body armor, in violation of 18 U.S.C. §§ 931 and 921(a)(35) (Count 27); solicitation to commit murder, in violation of 18 U.S.C. § 373 (Count 28); and aiding and abetting the above offenses, in violation of 18 U.S.C. § 2.

Before trial, Henry filed both counseled and pro se motions to suppress, challenging the

searches of his person, car and residence.  The Court held a suppression hearing over two days

and then denied both motions.  Henry, 472 F. Supp. 2d at 658.  At trial, the Court bifurcated

Count 27 of the Superseding Indictment, the count charging possession of body armor.  Trial on

Counts 1 through 26 and Count 28 commenced on February 5, 2007.  On February 22, 2007, a

jury found defendant guilty on all 27 counts before it.  Thereafter, the government withdrew the

charge in Count 27.  On September 3, 2008, defendant was sentenced to 982 months – 81 years,

10 months – imprisonment, followed by 5 years of supervised release.  The Third Circuit

affirmed.  United States v. Henry, 360 F. App'x 395, 399 (3d Cir. 2010).

In the instant § 2255 motion, Henry raises three claims.  First, he argues that counsel

rendered ineffective assistance in litigating his suppression motions.  Second, he alleges a claim

of ineffective assistance of counsel for failure to move to dismiss the Indictment prior to the

filing of the Superseding Indictment.  Third, he contends that the Court erred in not allowing him

to select his own psychologist or psychiatrist to evaluate his competency to stand trial, and that

his appellate counsel was ineffective for failing to pursue the issue before the Third Circuit.  The

motion is fully briefed and ripe for review.

## III.  DISCUSSION

Each of Henry's claims includes an allegation that he was denied his Sixth Amendment

right to effective assistance of counsel.  The standard for assessing a claim of ineffective

assistance of counsel requires a familiar two-part inquiry.  "First, the defendant must show that

counsel's performance was deficient," that is, "that counsel's representation fell below an

objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

"Second, the defendant must show that [counsel's] deficient performance prejudiced the

defense." Id. at 687.  With respect to the second part of the inquiry, the defendant must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." Id. at 694.  With that framework in

mind, the Court addresses each of Henry's claims in turn.

     A.  Suppression Hearing

     Henry contends that his trial counsel rendered ineffective assistance in litigating his

suppression motions.  Specifically, Henry argues that his attorney would have discovered two

pieces of helpful evidence had he conducted a more diligent investigation.

     First, Henry asserts that his attorney failed to obtain a copy of his criminal history and his

parole file,[1] which he argues would have shown that he did not have a conviction for "any

firearms offense."  (Def.'s Mot. at 4; see also Def.'s Mem. in Supp. of Mot. at 5.)  This is

relevant, Henry alleges, because Donna Henry testified at the suppression hearing that Henry's

prior convictions for two counts of "robbery by point of gun" factored into her decision to detain

and search him when he walked into the parole office on October 21, 2003.  (Tr. Hr'g 1/29/07 at

91.)  Reading Henry's motion liberally, he appears to argue that Donna Henry did not actually

have information about whether the robberies for which he was on parole were committed at

gunpoint, and that she therefore lacked reasonable suspicion to detain him and search him, his car

and his home.  Henry asserts that if his attorney had reviewed his parole file prior to the

suppression hearing, "counsel would have learned that Donna Henry's testimony was false" and

would have therefore been able to successfully cross-examine her.  (Def.'s Mem. in Supp. of

Mot. at 5.)

_____

[1] Henry's parole file is not a matter of record in this case.

Second, Henry contends that his attorney should have subpoenaed his parole officer to testify at the suppression hearing.  He avers that his parole officer would have testified that, contrary to Donna Henry's testimony, Henry was permitted to travel while on parole to Montgomery County, where Abington Gun Sports is located.

Assuming, arguendo, the truth of Henry's assertions – and further assuming that his attorney performed deficiently by not uncovering the evidence Henry cites – he cannot show he suffered prejudice as a result.  Thus, his claim of ineffective assistance at the suppression hearing must be denied.

The Third Circuit has held that "a parolee's car or home can be searched on the basis of reasonable suspicion alone."  United States v. Baker, 221 F.3d 438, 444 (3d Cir. 2000).  "The decision to search must be based on 'specific facts,' but the officer need not possess probable cause."  Id. (quoting United States v. Hill, 967 F.2d 902, 910 (3d Cir. 1992)).  "To decide whether 'reasonable suspicion' exists, we consider the totality of the circumstances to determine whether the 'officer has a particularized and objective basis for suspecting legal wrongdoing.'"  United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

In this case, the Court concluded that the parole agents "had reasonable suspicion to search defendant's person and vehicle based on (1) information from Agent Gallagher that McQuay had straw purchased guns for defendant; and (2) defendant's admission that he traveled outside of Philadelphia."  Henry, 472 F. Supp. 2d at 656.  Henry's allegations, even if true, do not disturb that conclusion.

Upon receiving reliable information from a law enforcement officer that Henry had

purchased (through McQuay) and possessed guns, Donna Henry had much more than a "reasonable suspicion" that Henry had violated both the law and the terms of his parole.  See United States v. Tirado, 133 F. App'x 13, 16-19 (3d Cir. 2005) (holding that search conducted pursuant to reliable tip from informant satisfied "reasonable suspicion" standard).  That gave her the authority to detain him and search his person.  See Williams, 417 F.3d at 376.  Without more, it also gave the parole agents authority to search Henry's car and home.  See United States v. Ball, 282 F. App'x 126, 128 (3d Cir. 2008) ("These [failed and doctored drug] tests, combined with the anonymous tip that [the parolee] sold drugs out of his residence, gave his parole officers reasonable suspicion to search his person, car, and residence.").

However, there is additional evidence that supports the authority of the parole agents to search Henry's car and home.  As to the car, Donna Henry possessed reliable information from Agent Gallagher that Henry had traveled outside of Philadelphia to straw purchase the guns.[2] Regardless whether that travel violated the terms of Henry's parole, it provided an additional reason for the agents to believe that evidence of Henry's gun purchases and the guns would be found in the car.  As to the house, before that search, Henry made a statement to Agent Gallagher in which he admitted that he stored at least some of the straw purchased weapons at his residence.  This admission gave parole agents reasonable suspicion that they would find weapons in the home.

Finally, in denying Henry's suppression motions, the Court noted that there was "uncontroverted testimony" that Henry had consented to the search of his car and that his mother,

---

[2] In addition, after he was detained, Henry admitted to Donna Henry that he traveled outside of Philadelphia while on parole.  (See Tr. Hr'g 1/29/07 at 77, 80.)

who owned the house in which Henry resided, had consented to the search of the house.  Henry,

472 F. Supp. 2d at 652, 658.  Their voluntary consent, without more, would be sufficient to

justify those searches under the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S.

218, 219 (1973) ("It is . . . well settled that one of the specifically established exceptions to the

requirements of both a warrant and probable cause is a search that is conducted pursuant to

consent.").

       In sum, even had Henry's trial counsel elicited the information that Henry alleges could

have been presented, the result of the Court's ruling on the suppression motions would have been

the same.  Accordingly, his claim that counsel rendered ineffective assistance in litigating the

suppression motions is denied.

       B.  Dismissal of the Indictment

       Henry next asserts a claim of ineffective assistance of counsel for failure to move to

dismiss the original Indictment based on prosecutorial misconduct before the grand jury that

returned that Indictment.  This claim is meritless.

       By Order of January 3, 2007, the Court denied Henry's pro se motion raising the same

argument regarding prosecutorial misconduct.  (See Doc. No. 318.)  The Court also denied

Henry's motion for reconsideration of that decision by Order of January 30, 2007.  (See Doc. No.

359.)

       It is significant that a separate grand jury returned a Superseding Indictment against

Henry, and that he was tried and convicted on the basis of those charges.  Henry has never

demonstrated that any impermissible testimony or other evidence was placed before the grand

jury that handed down the Superseding Indictment.  Moreover, even if any such testimony or

other evidence was presented to the grand jury that returned the original Indictment, Henry has never provided evidence of how this purported misconduct prejudiced him, particularly given the extensive evidence presented to the first grand jury of his commission of the crimes charged.  See United States v. Soberon, 929 F.2d 935, 939 (3d Cir. 1991) ("[A] district court is bound by the doctrine of 'harmless error' and may not dismiss an indictment on the basis of prosecutorial misconduct before the grand jury without making a factual finding that the defendant was prejudiced by that misconduct.").  The evidence presented to the first grand jury included, inter alia, recorded statements in which Henry detailed his involvement in the crimes charged to a confidential informant with whom he was incarcerated.[3]

As the Court's prior rulings make clear, any effort by counsel to further pursue dismissal of the first Indictment against Henry would have been fruitless.  "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (1999).  Thus, Henry's claim that his counsel rendered ineffective assistance by not moving to dismiss the first Indictment before the filing of the Superseding Indictment is denied.

C.  Competency Determination

Finally, Henry argues that the Court erred in not naming a psychiatrist or psychologist of his choosing to conduct an evaluation of him to ascertain his competency to stand trial.  He further contends that his appellate counsel performed ineffectively by failing to raise this issue on

---

[3] The Court notes that it was Henry who made the allegedly improper evidence presented to the first grand jury a matter of public record by transcribing it into his motion to dismiss the Superseding Indictment.  (See Doc. No. 259.)  The Court subsequently sealed that motion.  (See Doc. No. 408.)  The Court also ordered the government not to introduce at trial evidence relating to the subject of the purportedly improper evidence.  (See Tr. Hr'g 1/29/07 at 21.)

direct appeal.  This claim lacks any legal support.

On January 23, 2007, just days before the start of Henry's trial, he filed a pro se Motion for Determination of Mental Competency to Stand Trial and Determination of the Existence of Insanity at the Time of the Offense. (Doc. No. 337.)  The government subsequently filed a motion asking the Court to order a psychiatric or psychological examination of Henry and to declare him competent to stand trial.  (See Doc. No. 348.)

The Court held a hearing on the matter on January 29, 2007.  At the hearing, the government stated that it was able to obtain a psychiatrist, Dr. John O'Brien, to evaluate defendant and issue a report on defendant's competency prior to trial.  Following the hearing, the Court issued an Order dated January 29, 2007, which states as follows:

> Defendant shall immediately submit to a psychiatric or psychological examination by Dr. John L. O'Brien (a) pursuant to 18 U.S.C. § 4242(a) for the purpose of opining on defendant's stated intention to rely on the defense of insanity and (b) pursuant to 18 U.S.C. § 4241 to determine whether there is reasonable cause to believe that defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. . . .

(Doc. No. 357.)

Dr. O'Brien examined Henry at the Federal Detention Center in Philadelphia the next day.  On February 2, 2007, the Court conducted a second hearing on the competency motions.  At that hearing, Dr. O'Brien opined that Henry was competent to stand trial.  At the conclusion of the hearing, the Court declared Henry competent to stand trial.  (See Doc. No. 374.)

In his § 2255 motion, Henry argues that he was entitled to select the mental health professional who performed the competency evaluation.  For support, he cites to 18 U.S.C.

-10-

§ 4247(b).  That section provides, in pertinent part:

> A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant. . . .

This provision is of no help to Henry.  As the Court's Order of January 29, 2007 made clear, Dr. O'Brien was appointed to conduct his evaluation pursuant to 18 U.S.C. §§ 4241 and 4242, not §§ 4245, 4246 or 4248.[4]  Accordingly, under § 4247(b) the Court was not required to appoint an examiner of Henry's choosing.  The Court did not err in declining to do so, and Henry's appellate counsel did not err in declining to pursue this meritless claim on direct appeal. See Sanders, 165 F.3d at 253.  Accordingly, Henry's challenge to the pretrial competency evaluation is denied.

    D.  Evidentiary Hearing

A court must hold an evidentiary hearing on a motion under 28 U.S.C. § 2255 "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (internal quotation marks and citations omitted).  However, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing. . . ."  Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987).  For the reasons discussed above, the Court concludes that the motion and files and

---

[4] Those sections address competency evaluations of, respectively: (1) incarcerated individuals with mental disorders who object to being hospitalized; (2) incarcerated individuals who are nearing their release date but would pose a danger to others if released because they suffer from mental disorders; and (3) incarcerated individuals whom the government seeks to have civilly committed as "sexually dangerous persons."  See 18 U.S.C. §§ 4245, 4246, 4248.

-11-

records of the case show conclusively that Henry is not entitled to relief under § 2255.

Accordingly, the Court will not hold an evidentiary hearing.

**IV.  CONCLUSION**

  For the foregoing reasons, Henry's motion for relief under § 2255 is denied without an

evidentiary hearing.  An appropriate order follows.